**Carlos GUARISMA, Plaintiff,**

**v.**

**MICROSOFT CORPORATION, Defendant.**

**CASE NO. 15-24326-CIV-ALTONAGA/O'Sullivan**

United States District Court, S.D. Florida.

Signed July 26, 2016

Michael Hilicki, Keogh Law Ltd., Chicago, IL, Scott David Owens, Scott D. Owens, P.A., Hollywood, FL, Bret Leon Lusskin, Jr., Bret Lusskin, P.A., Aventura, FL, for Plaintiff.

Brian Michael Ercole, Morgan Lewis, Bockius, Miami, FL, for Defendant.

## ORDER

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** came before the Court upon Defendant, Microsoft Corporation's ("Microsoft['s]") Motion to Dismiss ... ("Motion") [ECF No. 29], filed on June 15, 2016. Plaintiff, Carlos Guarisma ("Guarisma") filed a Response ... ("Response") [ECF No. 32] on July 11, 2016; Microsoft filed a Reply ... ("Reply") [ECF No. 34] on July 21, 2016. The Court has carefully considered the parties' submissions, the record, and applicable law.

### I. BACKGROUND [1]

On November 18, 2015, Guarisma entered a Microsoft store in Aventura, Florida, and purchased a Microsoft Surface Pen Tip Kit ("Pen Tip Kit"), worth approximately $10.00. (*See* Compl. ¶ 28; *see also* Declaration of Julio Gustavo Gonzalez ("Gonzalez Declaration") [ECF No. 29-1] ¶ 7). Upon paying for the Pen Tip Kit with his personal Visa credit card, Guarisma received a printed receipt bearing the first six digits of his credit card account number, along with the last four digits. (*See* Compl. ¶ 29). The receipt also contained Guarisma's name and the name of the salesperson who conducted the transaction. (*See id.* ¶ 30).

The receipt and the Pen Tip Kit's packaging bore several statements regarding

1. The factual allegations of the Class Action Complaint ... ("Complaint") [ECF No. 1] are accepted as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997).

warranties. (*See generally* Gonzalez Decl., Ex. 1 ("Receipt"); Ex. 2 ("Packaging")). Specifically, the receipt instructed the purchaser to "see the warranty terms and conditions accompanying the product." (Receipt 2). The Pen Tip Kit's packaging contained a label stating: "Limited Warranty applies: surface.com/warranty." (Packaging 2). Upon visiting this Internet address, a purchaser can view the full text of the warranty. (*See* Declaration of Karen Bass ("Bass Declaration") [ECF No. 29-2] ¶¶ 5–9). The warranty states: "By using your Microsoft Surface purchased from an authorized retailer ... you agree to this warranty. Before using it, please read this warranty carefully. If you do not accept this warranty, do not use your Microsoft hardware or accessory. Return it unused to your retailer or Microsoft for a refund." (*Id.*, Ex. 1 ("Warranty") 1 (alteration added)).

Section 8 of the Warranty provides: "If You and Microsoft do not resolve any dispute by informal negotiation or in small claims court, any other effort to resolve the dispute will be conducted exclusively by binding arbitration. You are giving up the right to litigate (or participate in as a party or class member) all disputes in court before a judge or jury." (*Id.* 3). "Dispute" is defined as "any dispute, action, or other controversy between You and Microsoft concerning the Microsoft Hardware or Accessory (including its price) or this warranty, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis." (*Id.*). Section 8 also contains a class action waiver, stating: "Any proceedings to resolve or litigate any dispute in any forum will be conducted solely on an individual basis. Neither You nor Microsoft will seek to have any dispute heard as a class action ...." (*Id.* (alteration added)).

On November 20, 2015, Guarisma filed the instant lawsuit, alleging Microsoft violated the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681, which prohibits any person accepting credit or debit cards for the transaction of business from printing "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." *Id.* § c(g); (*see also* Compl.). Guarisma brings the present case as a class action pursuant to Federal Rule of Civil Procedure 23; and alleges Microsoft's failure to comply with the FACTA placed him and the members of the putative class at an elevated risk of identity theft. (*See* Compl. ¶¶ 40, 62). Guarisma seeks punitive damages, injunctive relief, attorney's fees and costs, and statutory damages pursuant to 15 U.S.C. section 1681n, which provides damages from "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer ...." 15 U.S.C. § 1681n (alterations added); (*see also* Compl. ¶ 62). Microsoft moves to dismiss the claim, or alternatively to compel Guarisma to individual arbitration. (*See generally* Mot.).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (alteration added; citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

## III. ANALYSIS

Microsoft argues the Court lacks subject matter jurisdiction because Guarisma cannot show he suffered an injury-in-fact. (*See* Mot. 7). In the alternative, Microsoft contends Guarisma should be compelled to arbitrate on an individual basis due to the warranties printed on the receipt and product he purchased. (*See id.* 12). The Court considers each issue in turn.

### A. Subject Matter Jurisdiction

Microsoft contends Guarisma does not have standing because he cannot demonstrate he suffered a concrete injury. (*See id.* 7). In response, Guarisma argues Microsoft's failure to comply with the FACTA constitutes a concrete injury in and of itself. (*See* Resp. 3–7).

To establish subject matter jurisdiction, a plaintiff must allege he has standing, which consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016), *as revised* (May 24, 2016). "To establish injury in fact, a plaintiff must demonstrate he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1, 112 S.Ct. 2130. For the injury to be "concrete," it must be "real," and not "abstract;" however it need not be "tangible." *Spokeo*, 136 S.Ct. at 1548–49 (explaining intangible violations such as restricting free speech can qualify as concrete harms).

Guarisma's injury is clearly particularized, as he received a receipt that included his own personal credit card information, as well as his name. (*See* Compl. ¶¶ 29–30). The issue at hand is whether Guarisma has also sufficiently established his alleged injury is concrete, specifically as he has not experienced any attempted identity theft or other obstacles as a result of the printed receipt. (*See generally id.*). Guarisma primarily argues Microsoft's violation of the FACTA constitutes a concrete injury in and of itself because Congress created a substantive right for individuals to receive printed receipts that truncate their personal credit card information, in order to decrease the ever-present threat of identity theft. (*See* Resp. 3–7). The Court agrees.

The Supreme Court recently analyzed a similar concrete-injury question in *Spokeo v. Robins*. *See generally* 136 S.Ct. 1540. There, the defendant operated a website allowing users to search for information

about other individuals by name, email address, or phone number. *See id.* at 1546. Robins, the plaintiff, noticed his profile on the defendant's website contained inaccurate information; thus, he brought a claim under the FCRA, which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy" of consumer reports. *Id.* at 1545–46 (citing 15 U.S.C. § 1681e(b)). Remanding the case to the Ninth Circuit, the Supreme Court held Robins could not satisfy the injury-in-fact requirement "by alleging a bare procedural violation" of the FCRA, divorced from any concrete harm. *Id.* at 1549–50.

The Supreme Court provided two examples of such bare procedural violations. The first example is a situation where a consumer reporting agency fails to provide a required notice to a user of the agency's consumer information, but the information turns out to be entirely accurate regardless. *See id.* at 1550. The second example is a situation where a consumer agency reports some trivial inaccurate information, such as an incorrect zip code, which works no concrete harm upon the consumer. *See id.* The Supreme Court found both of these scenarios, without allegations of additional harm, would not suffice to satisfy the injury-in-fact requirement. *See id.*

In contrast, the *Spokeo* Court acknowledged "Congress may 'elevate to the status of legally cognizable injuries, concrete, *de facto* injuries that were previously inadequate in law,'" *id.* at 1549 (quoting *Lujan,* 504 U.S. at 578, 112 S.Ct. 2130 (alteration omitted)); and in some cases, a plaintiff "need not allege any additional harm beyond the one Congress has identified," *id.* (emphasis omitted). In other words, the Supreme Court recognized where Congress has endowed plaintiffs with a *substantive* legal right, as opposed to creating a procedural requirement, the plaintiffs may sue to enforce such a right without establishing additional harm. *See generally id.*

The Eleventh Circuit has further explored the post-*Spokeo* landscape in an unpublished opinion: *Church v. Accretive Health, Inc.*, No. 15-15708, 654 Fed.Appx. 990, 2016 WL 3611543 (11th Cir. July 6, 2016). In *Church*, a hospital management company sent the plaintiff a letter advising her she owed a debt to a particular hospital. *See id.* at 991–92, 2016 WL 3611543 at *1. The plaintiff brought suit against the hospital management company for failing to include certain disclosures in its letter required by the Fair Debt Collections Practices Act ("FDCPA"). *See id.* The plaintiff did not allege she suffered actual damages from the company's failure to disclose; nonetheless, the Eleventh Circuit held the plaintiff sufficiently alleged a concrete injury because: (1) in enacting the FDCPA, Congress created a substantive right to receive the required disclosures in relevant communications; and (2) the defendant violated this substantive right by failing to provide such disclosures. *See id.* at 993–95, 2016 WL 3611543 at *3. In reaching its decision, the Eleventh Circuit relied on *Spokeo*, as well as *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), in which the Supreme Court held an injury-in-fact "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id.* at 373, 102 S.Ct. 1114 (internal quotation marks and citation omitted).

Using *Spokeo* and *Church* as guideposts, the question before the Court appears to be whether, in enacting the FACTA, Congress created a substantive right for consumers to have their personal credit card information truncated on printed receipts, or merely created a procedural requirement for credit card-using companies to follow. The Court is persuaded Congress intended to create a substantive right. No-

tably, other courts have found the FACTA endows consumers with a legal right to protect their credit identities, both pre- and post-*Spokeo*. *See Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498–99 (8th Cir. 2014) ("By enacting 15 U.S.C. § 1681c(g)(1), Congress gave consumers the *legal right* to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number. Appellants contend that Sam's Club invaded this right. ... Thus, we conclude that appellants have alleged an injury-in-fact sufficient to confer Article III standing." (alteration and emphasis added)); *see also Amason v. Kangaroo Exp.*, No. 7:09–CV–2117–RDP, 2013 WL 987935, at *4 (N.D.Ala. Mar. 11, 2013) ("[T]he statutory provisions invoked by Plaintiffs, 15 U.S.C. §§ 1681c(g) and 1681n, create a *substantive right* to have one's financial information protected through truncation and also provide a procedural right to enforce that truncation." (alteration and emphasis added)); *Altman v. White House Black Market, Inc.*, Case No. 1:15–cv–02451–SCJ, 2016 WL 3946780 (N.D.Ga. Jul. 13, 2016) (finding Congress, in enacting the FACTA, created a substantive right to receive a truncated credit card receipt, the invasion of which constitutes a concrete injury).

Courts have also considered a FACTA violation to be concrete as soon as a company prints the offending receipt, as opposed to requiring a plaintiff actually suffer identity theft. *See Amason*, 2013 WL 987935, at *4 (stating:

> Plaintiffs have alleged that their right to have their financial information protected was actually invaded when Defendants printed more than the last 5 digits of their credit and/or debit card numbers in violation of 15 U.S.C. § 1681c(g).... Because the Amended Complaint states that the invasion has already occurred and that it happened specifically to Plaintiffs as opposed to consumers who had never transacted business with Defendants, Plaintiffs have shown that the invasion is concrete and particularized as well as actual.

(alteration added; internal citation omitted)).

The FACTA's legislative history supports the Court's finding Congress desired to create a substantive legal right for consumers to utilize in protecting against identity theft.[2] In particular, the "FACTA arose from a desire to prevent identity theft that can occur when card holders' private financial information, such as a card holder's complete credit card number, is exposed on electronically printed payment card receipts." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333 (S.D.Fla.2009), *rev'd in part*, 444 Fed.Appx. 370 (11th Cir.2011); *see also* 149 Cong. Rec. H8122-02 (statement of Rep. Shadegg) ("[T]he bill requires that anytime a transaction is made and information is transmitted using a credit card number, that number has to be truncated so that someone who wants to steal your identity by grabbing ahold of your credit card number will not have the full number" (alteration added)); 149 Cong. Rec. H8122-02 (statement of Rep. Jackson-Lee) ("This bill ... will include comprehensive identity theft ... provisions." (alterations added)); H.R. Conf. Rep. No. 396, 108th Cong., 1st Sess. (2003) (statement of Rep. Oxley) ("One of the central elements of [the FACTA bill] was to make the new fraud prevention ... contained in the legislation the new uniform national standards on those subject matters. The bill

2. Congress's intent is particularly significant in this analysis as the *Spokeo* Court stated: "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." 136 S.Ct. at 1549.

was drafted in this way because identity theft is a national concern." (alterations added)).

Because: (1) the FACTA created a substantive legal right for Guarisma and other consumers to receive printed receipts truncating their personal credit card numbers, and thus protecting their financial information; and (2) Guarisma personally suffered a concrete harm in receiving a receipt that violated this statute, Guarisma has sufficiently alleged an injury-in-fact so as to confer standing. Therefore, the Court has subject-matter jurisdiction over this case, and Microsoft's Motion is denied with respect to its jurisdictional arguments.

**B. Requirement to Arbitrate**

In the alternative, Microsoft argues Guarisma should be compelled to arbitrate his claim on an individual basis, due to the warranties printed on the receipt and product he purchased. (*See* Mot. 12). In response, Guarisma asserts: (1) the arbitration clause's plain terms exclude individuals like Guarisma who never used the purchased product; and (2) the clause's scope does not reach FACTA claims. (*See* Resp. 14). For the following reasons, the Court agrees.

1. "Use" of the Product

Florida courts construe contracts according to their plain language. *Gendzier v. Bielecki*, 97 So.2d 604, 608 (Fla.1957) ("The writing itself is the evidence of what [the parties] meant or intended by signing [the contract]. The test of the meaning and intention of the parties is the content of the written document." (alterations added)). The plain language of Microsoft's Warranty states: "By *using* your Microsoft Surface purchased from an authorized retailer ... you agree to this warranty. Before *using* it, please read this warranty carefully. If you do not accept this warranty, do not *use* your Microsoft hardware or accessory. Return it unused to your retailer or Microsoft for a refund." (Warranty 1 (alteration and emphases added)).

Guarisma asserts he never used the Pen Tip Kit or even opened its packaging. (*See* Affidavit of Plaintiff Carlos Guarisma ("Guarisma Affidavit") [ECF No. 32-2] ¶ 5). He states he bought the product for someone else and gave it to him. (*See id.*). Therefore, by the Warranty's own terms, Guarisma did not agree to the Warranty because he never used the Pen Tip Kit. (*See* Warranty 1). The Court is not persuaded by the lexicological acrobatics Microsoft asserts in its Reply, arguing Guarisma used the product by "purchasing and taking hold" of it. (Reply 7 (internal quotation marks omitted)). If Microsoft intended the consumer to manifest assent to the Warranty by merely purchasing the product, it would have written: "By *purchasing* your Microsoft Surface, you agree to this warranty," rather than "By *using* your Microsoft Surface purchased from an authorized retailer ... you agree to this warranty" (Warranty 1 (emphasis and alteration added)).

The Court acknowledges the Warranty later states: "For 1 year from the date You *purchased* Your Microsoft Hardware or Accessory ... Microsoft warrants, only to You, that the Microsoft Hardware or Accessory will not malfunction ...." (*Id.* (alterations and emphasis added)). This language is not inconsistent with the Court's finding. Rather, this sentence indicates the length of the Warranty period—or the period of time in which Microsoft guarantees remedies for its products' malfunctions—but has no impact on the consumer's agreement to the Warranty. Therefore, the Court finds Guarisma did not agree to the Warranty, as he did not use the product he purchased from Microsoft.

2. Scope of the Arbitration Clause

The Court also finds the Warranty's arbitration clause does not apply to

Guarisma's FACTA claim. Section 8 of the Warranty provides: "If You and Microsoft do not resolve any dispute by informal negotiation or in small claims court, any other effort to resolve the dispute will be conducted exclusively by binding arbitration. You are giving up the right to litigate (or participate in as a party or class member) all disputes in court before a judge or jury." (*Id.* 3). "Dispute" is defined as "any dispute, action, or other controversy between You and Microsoft *concerning the Microsoft Hardware or Accessory* (including its price) or this warranty, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis." (*Id.* (emphasis added)).

Guarisma's FACTA claim does not concern the Microsoft product he purchased, its price, or the Warranty. (*See generally* Compl.). Rather, the Complaint entirely concerns Microsoft's business practice of failing to truncate credit card information from its printed receipts. (*See id.*). Thus, the arbitration clause does not cover the instant claim. Further, the Court is not persuaded by Microsoft's argument an arbitrator must determine whether the FACTA claim falls within the scope of the arbitration provision. (*See* Reply 10). Rather, "the *Court* must determine whether an applicable agreement to arbitrate exists and, if so, whether the disputes at issue are within the scope of the parties' agreement to arbitrate.... All other issues should be resolved by the arbitrator in the first instance...." *In re Managed Care Litig.*, No. 00-MD-1334, 2003 WL 22410373, at *3 (S.D.Fla. Sept. 15, 2003) (alterations and emphasis added; internal citation omitted), *aff'd sub nom. Klay v. All Defs.*, 389 F.3d 1191 (11th Cir.2004). Here, the Court has simply determined Guarisma did not agree to the Warranty containing the arbitration clause, and the dispute at issue is not within the scope of the parties' agreement to arbitrate.[3] Thus, the Court denies Microsoft's request to compel Guarisma to arbitrate his claim on an individual basis.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion [**ECF No. 29**] is **DENIED.**

**DONE AND ORDERED** in Miami, Florida this 26th day of July, 2016.

3. The fact the Warranty's arbitration clause incorporates the American Arbitration Association's ("AAA['s]") rules does not alter this conclusion, because the Court finds Guarisma did not agree to the Warranty. *See Lepisto v. Senior Lifestyle Newport Ltd. P'ship*, 78 So.3d 89, 93 (Fla. 4th DCA 2012) (finding the fact the contract incorporated the AAA rules did not mandate arbitration where the parties dispute whether, and in what capacity, the plaintiffs entered into the contract).