**Justin BOUTON, Plaintiff,**

v.

**OCEAN PROPERTIES, LTD, et al., Defendants.**

**Case No. 16–cv–80502**

United States District Court, S.D. Florida.

Entered September 22, 2017

Filed 09/27/2017

Michael R. Karnuth, Keith James Keogh, Keogh Law, LTD, Chicago, IL, Bret Leon Lusskin, Jr., Bret Lusskin, P.A., Aventura, FL, Patrick Christopher Crotty, The Law Office of Scott D. Owens, Hollywood, FL, Sean Martin Holas, Scott David Owens, Scott D. Owens, P.A., Hollywood, FL, for Plaintiff.

Francis Augustine Zacherl, III, Jacob Benjamin Monk, Shutts & Bowen, Miami, FL, Jason Kenneth Kellogg, Stuart Isaac Grossman, Victoria Jean Wilson, Levine Kellogg Lehman Schneider Grossman LLP, Miami, FL, for Defendants.

## ORDER

BETH BLOOM, UNITED STATES DISTRICT COURT

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Class Certification, ECF No. [251] (the "Motion"). The Court has reviewed the Motion, all supporting and opposing filings, the record in this case, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

### I. BACKGROUND

Plaintiff Justin Bouton ("Plaintiff") brings a putative class-action lawsuit against Defendants for their alleged violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended ("FCRA"). *See* ECF No. [47] at ¶ 1 ("Second Amended Complaint"). In the Second Amended Complaint, Plaintiff claims that Defendant Ocean Properties, Ltd ("OPL") represents that it develops, owns and operates hotels in several states, including Florida. *Id.* at ¶ 5. Defendant Oprock Jupiter Fee, LLC ("Oprock Fee") owns the property Jupiter Beach Resort & Spa ("Jupiter Beach Resort"), the hotel at which Plaintiff allegedly received a FACTA violative receipt. *Id.* at ¶ 6. Defendant Oprock Jupiter TRS, LLC ("Oprock TRS") leases the Jupi-

ter Beach Resort property from Oprock Fee. *Id.* at ¶7. Defendant GHM Jupiter, LLC ("GHM") manages the Jupiter Beach Resort pursuant to a management agreement with Oprock TRS. *Id.* at ¶8. Plaintiff claims that all Defendants are "privately-owned companies, which are directly and indirectly owned and operated by Tom Walsh and his children," and that "[t]hrough a byzantine ownership and management structure, Defendants operate their hotel businesses as a unitary enterprise." *Id.* at ¶¶ 9–10. Specifically, "Defendants share common owners, managers, addresses, and resources, and use the OPL legal name when describing its business operations in a singular fashion." *Id.* at ¶ 10. According to Plaintiff, "Defendants were acting jointly as a unitary enterprise utilizing the resources and legal name of [OPL], and by and though their agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants." *Id.* at ¶ 43. Further with respect to the Jupiter Beach Resort, Plaintiff alleges that OPL developed the hotel in 2005 and thereafter, in 2007, established Oprock Fee, Oprock TRS and GHM to own and jointly manage that hotel property. *Id.* at ¶ 12.

According to the Second Amended Complaint, on or about March 9, 2016, Plaintiff used his Visa credit card to pay for his stay at the Jupiter Beach Resort, and "upon checking out of the hotel Plaintiff was provided with an electronically printed receipt generated from a point of sale terminal device, bearing the expiration date of his credit card," *Id.* at ¶¶ 41–42. Plaintiff claims that "[i]t is Defendants' policy and procedure to issue an electronically printed receipt to individuals at the point of sale— *i.e.*, immediately upon receipt of credit card payment," and that "Defendants knowingly and intentionally included the expiration date of the credit card on its electronically printed receipts." *Id.* at ¶¶ 46–47. Plaintiff alleges that by issuing the non-compliant receipt, Defendants' conduct was in "willful and reckless disregard for federal law and the rights of the Plaintiff." *Id.* at ¶ 45. Plaintiff, on behalf of himself and the putative class, brings one count against Defendants for violation of 15 U.S.C. § 1681(c)(g), alleging that "Defendants are liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs." *Id.* at ¶ 74. Within the Second Amended Complaint, Plaintiff defines the proposed class and subclass as follows:

Class:

All persons in the United States (ii) who, when making payment pursuant to a purchase made at any one of Ocean Properties, Ltd.'s operated and/or controlled businesses, (iii) made such payment using a credit or debit card (iv) and were provided with a printed receipt (v) which displayed the expiration date or more than five digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.

Subclass:

All persons in the United States (ii) who, when making payment pursuant to a purchase made at Defendants' Jupiter Beach Hotel Resort & Spa (iii) made such payment using a credit or debit card (iv) and were provided with a printed receipt (v) which displayed the expiration date or more than five digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.

*Id.* at ¶ 54.

Alter extensive discovery, Plaintiff now seeks to certify the class and asks the Court to appoint him as a class representative and his counsel as class counsel. *See* ECF No. [251]. Defendants filed memoranda in opposition in which they object to the certification of the class on numerous grounds discussed below. *See* ECF Nos. [279] and [281]. Plaintiff's Combined Reply timely followed. *See* ECF No. [290]. In addition, with leave of Court, Defendants each filed a Sur–Reply. *See* ECF Nos. [301] and [304]. The class certification issue has been thoroughly briefed and is now ripe for review.

## II. STANDARD OF REVIEW

■ District courts have broad discretion in deciding whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).

To certify a class action, the named plaintiffs must have standing, and the putative classes must "satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pham., Inc.*, 621 Fed.Appx. 945, 946 (11th Cir. 2015) (citing *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)); *see Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]he putative class must meet each of the four requirements specified in [Rule] 23(a), as well as at least one of the three requirements set forth in [Rule] 23(b)."); *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) ("A class action may be maintained only when it satisfies all of the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)."). "Under Rule 23(a), every putative class first must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citing Fed. R. Civ. P. 23(a); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187–88 (11th Cir. 2003)). Plaintiff has chosen to proceed under Rule 23(b)(3), pursuant to which a class action may be maintained only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997); *see also Rutstein*, 211 F.3d at 1233. The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)). That is, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (emphasis added). "A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega*, 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).

## III. DISCUSSION

### A. FACTA

Plaintiff has filed claims on behalf of himself and the putative class for a FACTA violation. Congress enacted FACTA in an effort to "protect[ ] consumers from identity theft." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). FACTA requires the "[t]runcation of credit card and debit card numbers" in the following instances:

(1) In general

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

(2) Limitation

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

15 U.S.C. § 1681c(g)(1)–(2). Violators of this section are subject to civil liability. *See Torongo v. Roy*, 176 F.Supp.3d 1320, 1323 (S.D. Fla. 2016). Here, Plaintiff seeks to hold Defendants liable on a class-wide basis for providing cardholders with hotels folios containing the last four credit-card digits along with the credit card expiration date.

### B. Individual Standing

Before analyzing each of the requirements of Rule 23, the Court must first consider the question of standing. "It is well-settled in the Eleventh Circuit that prior to

the certification of a class, and before undertaking an analysis under Rule 23, the district court must determine that at least one named class representative has Article III standing to raise each class claim." *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 679 (S.D. Fla. 2004) (citing *Wolf Prado–Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000)); *Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing.")). Indeed, "[o]nly after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin,* 823 F.2d at 1482. "To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris,* 331 F.3d 817, 819–20 (11th Cir. 2003).

■■■ In this case. Defendants [1] challenge Plaintiff's standing to pursue this FACTA claim on behalf of the class. Defendants jointly contest Plaintiff's ability to demonstrate an injury in fact and OPL individually contests the second element of standing—whether the injury is fairly traceable to its conduct.[2] Addressing whether Plaintiff has suffered an injury in fact, the Court first notes that OPL has previously challenged Plaintiff's standing and this Court has determined that "Plaintiff has plead a concrete injury, and that the Court has subject-matter jurisdiction over this case." ECF No. [44] at 15–17. Nevertheless, Defendants cite to new case law postdating *Spokeo, Inc. v. Robins,* — U.S. —, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) that discusses standing under FACTA. They argue that these decisions may be reconciled with this Court's prior rulings because they were based on allegations within the plead-

ings and not actual evidence. For the reasons explained below, the Court is not persuaded by the analysis in the two decisions upon which Defendants rely and declines to alter its finding that Plaintiff has indeed established a concrete injury under FACTA.

As Defendants recognize, this Court has not only considered standing within the context of FACTA in this case but also in another factually analogous FACTA class-action, *Wood v. Chao USA, Inc.,* 201 F.Supp.3d 1332 (S.D. Fla. 2016). In both decisions, this Court relied upon another FACTA case, *Guarisma v. Microsoft Corp.,* 209 F.Supp.3d 1261 (S.D. Fla. 2016). *Guarisma* explained that that Supreme Court has stated that "Congress may 'elevate to the status of legally cognizable injuries, concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1265 (quoting *Spokeo,* 136 S.Ct. at 1549). The Supreme Court has also recognized that Congress may endow "plaintiffs with a *substantive* legal right, as opposed to creating a procedural requirement, [allowing] the plaintiffs [to] sue to enforce such a right without establishing additional harm." *Id.* (citing *Spokeo*) (emphasis in original). After *Spokeo,* the Eleventh Circuit held, in the context of the Fair Debt Collections Practices Act ("FDCPA"), that even without alleging actual damages, a "plaintiff sufficiently alleged a concrete injury because: (1) in enacting the FDCPA, Congress created a substantive right to receive the required disclosures in relevant communications; and (2) the defendant violated this substantive right by failing to provide such disclosures." *Church v. Accretive Health, Inc.,* 654 Fed.Appx. 990, 994 (11th Cir. 2016)). Applying the same logic to a FACTA claim, the district court in *Guarisma* analyzed FACTA's legislative history and determined that Congress indeed intended to create "a substantive right for consumers to have their personal credit card information truncated on printed receipts." *See Guarisma,* 209 F.Supp.3d at 1266. Following *Church* and *Guarisma,* this Court has similarly found that FACTA creates such a sub-

---

**1.** Oprock Fee and Oprock TRS joined in and incorporated by reference all arguments set forth in OPL and GUM's Response to Plaintiff's Motion for Class Certification.

**2.** Although Oprock Fee, Oprock TRS and GHM all join in this argument, the argument itself is limited in its applicability to OPL.

stantive right and a violation of that right, standing alone, is sufficiently concrete to confer standing. *See Bouton v. OPL,* 201 F.Supp.3d 1341, 1352 (S.D. Fla. 2016) (collecting cases holding that a violation of FACTA's truncation requirement is a violation of a substantive right, which, in turn, constitutes a concrete injury for purposes of standing); *Wood,* 201 F.Supp.3d at 1340 (same).

Defendants now ask the Court to reconcile this line of cases with two recent decisions from the Seventh and Second Circuits to find that Plaintiff did not suffer an injury in fact. Plaintiff argues that there is concrete evidence—as opposed to mere allegations—that Plaintiff did not sustain an injury because, upon the printing of the receipt at the Jupiter Beach Resort, he immediately noticed the FACTA violation and safeguarded the receipt, preventing any potential identity theft. *See* ECF No. [281] at 4–5. Even if the Court could reconcile the decisions, which it cannot for the reasons explained below, such a rationale ignores that "[c]ourts[, including this one,] have [ ] considered a FACTA violation to be concrete *as soon as a company prints the offending receipt,* as opposing to requiring a plaintiff actually suffer identity theft." *Guarisma,* 209 F.Supp.3d at 1266 (emphasis added); *see also Wood,* 201 F.Supp.3d at 1340 (emphasis added) ("Because Wood suffered a concrete harm *as soon as Jimmy Choo printed the offending receipt,* the Complaint alleges an injury in fact sufficient to confer standing"). Here, the concrete harm materialized at the very moment the folio was printed, regardless of whether Plaintiff immediately noticed the violation and safeguarded it.

In making this argument, Defendants ask the Court to revisit its prior decision in light of *Meyers v. Nicolet Restaurant of De Pere, LLC,* 843 F.3d 724 (7th Cir. 2016) and *Crupar–Weinmann v. Paris Baguette America, Inc.,* 861 F.3d 76 (2d Cir. 2017). In both of those cases, the circuit courts analyzed the injury-in-fact requirement as applied to a FACTA claim involving the unmasking of expiration dates. In *Meyers,* the Seventh Circuit relied upon the following two findings contained within the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarifica-

tion Act"): (1) "[e]xperts in the field agree that proper truncation of the card number, by itself as required by the [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud" and (2) "the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit." *Meyers,* 843 F.3d at 728 (alterations in original) (quoting Pub. L. 110–241, § 2(a)(7)). Concluding that the Clarification Act was intended to limit FACTA lawsuits to those consumers "suffering from actual harm," the Seventh Circuit held that, "without a showing of injury apart from the statutory violation, the failure to truncate a credit card's expiration date is insufficient to confer Article III standing." *Id.* The *Meyers* decision, however, did not discuss or otherwise mention that the Clarification Act was intended to provide a safe-harbor for anyone sued for a FACTA violation committed between December 4, 2004 and June 3, 2008. *See* Pub. L. 110–241, § 3. As this Court explained in *Wood,* the Clarification Act expressly "eliminated any claim for a willful violation of FACTA based on the alleged failure to delete the expiration date from a receipt issued" *during this time period. Wood,* 201 F.Supp.3d at 1339. The *temporary* elimination of a willful violation claim limited FACTA lawsuits to those plaintiffs alleging actual harm to their credit or identity during this three-and-a-half year window. *Id.* After June 3, 2008, however, the safe-harbor provision expired, allowing plaintiffs to assert claims for willful violations and recover statutory damages, regardless of whether they suffered actual harm. *Id.* This is a critical issue that *Meyers* did not address. Additionally, *Meyers* did not draw a distinction between a violation of a substantive right and a violation of a procedural one, concluding that either one must be accompanied by an injury in fact. *Meyers,* 843 F.3d at 728, n. 2. This lack of a distinction is contrary to the Eleventh Circuit's holding and rationale in *Church* in which it found that a violation of a substantive right, without more, establishes a concrete injury and satisfies the

injury-in-fact requirement of standing. *Church*, 654 Fed.Appx. at 994–95.

Similarly, the Second Circuit's decision in *Crupar–Weinmann* is at odds with the Eleventh Circuit's standing analysis in *Church*. The Second Circuit took the position in its standing analysis that a FACTA violation is a "bare procedural violation," without analyzing or determining whether the violation is procedural versus substantive. *Crupar–Weinmam*, 861 F.3d at 81. Using *Church* as a guide, courts within this circuit have repeatedly found that a FACTA violation, much like an FDCPA violation, provides individuals with a substantive right and the violation of that right provides the requisite injury in fact to satisfy standing. *See Bouton*, 201 F.Supp.3d at 1352 (collecting cases). This case is no different. The violation of Plaintiff's substantive rights under FACTA occurred at the moment the folio was printed, and it is this violation that provides him the requisite injury in fact to create standing.

As part of the standing challenge, OPL seeks affirmative relief by asking this Court to dismiss Plaintiff's claims against OPL with prejudice, arguing that Plaintiff cannot establish that his harm is fairly traceable to its actions. Put simply, OPL attempts to obtain dispositive relief in the form of its response to the motion for class certification by asking the Court to decide the merits of Plaintiff's claims. The Court declines to consider the underlying merits of Plaintiff's substantive claims against OPL as Rule 23 does not grant courts a license to engage in free-ranging merits inquiries. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S, 455, 465–66, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013); *see also* Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."),[3] OPL's attempt to seek dispositive relief, as it attempts to do so in its Response, is improper absent a motion properly before the Court.

## C. Adequately Defined and Clearly Ascertainable

 "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.' " *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014) (quoting *Little*, 691 F.3d at 1304 (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970))). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed.Appx. 782, 787 (11th Cir. 2014) (citing *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90. 97 (S.D.N.Y. 2009)). These "objective criteria" should be "administratively feasible," meaning that the identification of class members should be "a manageable process that does not require much, if any, individual inquiries." *Id.* (citation omitted). If a plaintiff fails to demonstrate that the putative class is clearly ascertainable, then class certification is properly denied. *See Walewski v. Zenimax Media, Inc.*, 502 Fed.Appx. 857, 861 (11th Cir. 2012) (affirming denial of class certification because class was not adequately defined or clearly ascertainable); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult.").

### a. Adequately Defined

 Before determining the ascertainability of the class, the Court must first ensure the class is adequately defined. The Court notes that Plaintiff's proposed class definition has taken many different forms throughout the progression of this litigation as Plaintiff's theories of liability against Defendants evolved. Originally, in the Com-

---

**3.** Oprock TRS and Oprock Fee likewise argue the substantive merits of Plaintiff's claims in their Response to the Motion. *See* ECF No. [279]. At the certification stage, the Court may only consider the merits of Plaintiff's claims if relevant to determine whether the Rule 23 factors have been satisfied. The merits issues raised in Oprock TRS and Oprock Fee's Response go far beyond the scope of what this Court may consider at this point in the proceedings.

plaint and the Amended Complaint, Plaintiff defined the putative class as "[a]ll persons in the United States (ii) who, when making payment pursuant to a purchase made at one of Defendant's hotels, (iii) made such payment using a credit or debit card (iv) and were provided with a printed receipt (v) which displayed the expiration date of said credit or debit card ..." ECF No. [1] at ¶ 49; ECF No. [16] at ¶ 46. At that time, OPL was the only Defendant in the case, so the class was limited to OPL's hotels. *Id.* Thereafter, in the Second Amended Complaint, Plaintiff modified the class definition to include payments "pursuant to a purchase made at any one of Ocean Properties, Ltd.'s *operated and/or controlled businesses ...*" and Plaintiff added a subclass specific to the Jupiter Beach Resort. ECF No. [47] at ¶ 54. In this most recent pleading, Plaintiff asserts claims against OPL under a theory of direct or joint liability with the other Defendants, alleging that OPL was the sole legal entity "responsible for centralizing the administrative operations, including receipt generation, at all [of] its affiliated properties." *See* ECF No. [80] at 3. Alternatively, the Second Amended Complaint alleges claims of apparent agency against OPL "to the extent that the other entities were involved in printing the receipts," making OPL the principal and the other entities its agents. *Id.* As to all other Defendants, the Second Amended Complaint asserts a theory of direct liability under FACTA as the owner, lessor and manager respectively of the Jupiter Beach Resort. *See* ECF No. [47].

Now, in his Motion for Class Certification, Plaintiff seeks to further expand the scope of the proposed class by defining it as follows:

Class:

All persons in the United States (ii) who, when making payment pursuant to a purchase made at any one of Ocean Properties, Ltd.'s *affiliated,* operated and/or controlled businesses, (iii) made such payment using a credit card or debit card (iv) were provided with a printed receipt (v) which displayed the expiration date or more than five digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.

ECF No. [251] at 8–9 (emphasis added). In a footnote, Plaintiff defines the word "affiliated" within the class definition as "entities the Walsh family has an interest in or manages." *Id.* at 8, n. 15. Shedding further light on the scope, the Motion explains that Defendants implemented an upgrade to their software responsible for processing credit and debit card transactions at twelve "OPL-affiliated hotels," including the Jupiter Beach Resort, and this upgrade resulted in the unmasking of credit card expiration dates (i.e the FACTA violations). *Id.* at 2, 7. Thus, the broader class definition is intended to encompass all twelve "OPL-affiliated hotels"—not just OPL operated and/or controlled businesses as pled in the Second Amended Complaint. *Id.* at 7, n. 11.

The subclass, on the other hand, is identical to the one alleged in the Second Amended Complaint:

All persons in the United States (ii) who, when making payment pursuant to a purchase made at Defendants' Jupiter Beach Hotel Resort & Spa (iii) made such payment using a credit or debit card (iv) and were provided with a printed receipt (v) which displayed the expiration date or more than five digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.

ECF No. [251] at 8–9.

With regard to the broader class, the Court finds that Plaintiff impermissibly attempts to expand its scope far beyond the proposed definition and the theories pled in the Second Amended Complaint. Although a plaintiff may seek to certify a class definition *narrower* than the one proposed in the operative pleading without a new claim for relief, the converse is not allowed. *See Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614, 621 (S.D. Cal. 2015). Plaintiff cannot, as he attempts to do here, *expand* the scope of the proposed class at the certification stage to include entities and theories of liability that are not encompassed within the Second Amended Complaint. To do so would amount to an eleventh-hour amendment of the pleadings far beyond the August

16, 2016 deadline to amend [4] that comes well after the close of discovery and on the eve of trial. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (7th Cir. 2013) (stating that the "class definition is a tool of case management" that "settles the question of who the adversaries are, and so it enables the defendant to gauge the extent of its exposure to liability"). Although Plaintiff downplays the inclusion of the word "affiliated" within the class definition, this modification effectively means that all entities that any Walsh family member manages or has any interest in are now part of the broader class, regardless of whether that interest is a small minority interest, regardless of whether the Walsh family member has any ability to control that entity, and regardless of whether that entity is a party to this litigation. The Court will not allow Plaintiff to add an unpled veil-piercing theory against OPL's principals by means of its Motion for Class Certification. As a result, the Court finds that the broader class, as proposed in Plaintiff's Motion, is not adequately defined.

### b. Clearly Ascertainable

The issues with the proposed class definition as to both the broader class and the subclass—are compounded when the ascertainability factor is analyzed. Plaintiff argues that ascertainability here "is simple because membership is based on objective criteria (electronically-recorded card transaction data), and requires no significant individual inquiry." ECF No. [251] at 9. The Court's review of the evidence upon which

Plaintiff relies to ascertain the class reveals otherwise.

The burden is on Plaintiff, as the party seeking class certification, to demonstrate the ascertainability of the class.[5] In an effort to make this showing, Plaintiff refers the Court to the credit card transactions at the Jupiter Beach Resort consisting of approximately 5,400 transactions during the relevant four-month period and 200 pages of folios from the audit packs at the Jupiter Beach Resort containing unmasked expiration dates. *See* ECF No. [290] at 14. A deeper look at these records as well as the testimony cited by the parties leads the Court to conclude that, if the proposed class were certified, the Court must review each individual transaction to determine whether the class member received a folio with an unmasked expiration date. Throughout his argument, Plaintiff assumes that every single credit card transaction identified in the log was printed at the front desk with an unmasked expiration date. Similarly, Plaintiff assumes that each folio from the audit pack containing an unmasked expiration date was provided to the consumer and, therefore, constitutes evidence of a FACTA violation. To reach these conclusions, however, the Court must ignore the record evidence.

Starting with the credit card transaction logs, the Court notes that the top of the document identifies it as: "Jupiter Beach Resort Summary of Guests/Confirmations paid by Credit Card with transaction dates 12/22/2015–4/6/2016."[6] *See* ECF No. 290–5 at

---

4. Plaintiff has already had three opportunities to amend his complaint with the most recent one occurring four months into the discovery period. By the filing of the Second Amended Complaint, Plaintiff had ample opportunity to determine his theory of liability against Defendants, including the breadth of the proposed class.

5. The Court is aware that Plaintiff did not brief the issue of ascertainability in his Motion—as he was required to do and instead raised extensive arguments in support of ascertainability for the first time in his Reply. Although it is improper to raise arguments for the first time in a Reply, the Court will consider Plaintiff's arguments as any potential prejudice was cured by allowing Defendants to file a Sur–Reply.

6. Plaintiff cites to the deposition testimony of Richard Ade, Cliff Lazenby and Daniel Rich for

the proposition that "they knew of no transaction on the list of over 5,400 that did not unmask expiration dates." The Court's review of their testimony reveals that this statement is an oversimplification. Mr. Ade testified that he was not aware of any printed folio masking expiration dates, but this does not mean that the 5,400 credit card transactions on the log represent printed folios with unmasked expiration dates. *See* ECF No. [290–6] at 47. It simply means that all printed folios contained the unmasked information. With regard to Mr. Lazenby, Plaintiff refers the Court to a singular question and answer from this 300-page transcript. *See* ECF No. [290] at 15. From the context of the cited testimony, the Court cannot determine whether Mr. Lazenby was specifically asked about the credit card transaction log as the question does not refer to the log and the exhibits to Mr. Lazenby's

2. Plaintiff does not direct the Court to any evidence within this document indicating this is a list of transactions resulting in printed folios containing unmasked expiration dates handed to the consumers at the point of sale. The Court has likewise been unable to locate any such evidence within the document. For that reason, the Court turns to the testimony of the witnesses who discuss the content of the document. During the deposition of OPL's corporate representative, Richard Ade, he described it "as a list of customers who used a credit card that stayed at the hotel during that time period, but _not_ a list of customers that we have a folio for that date and time. That's _everyone_ who stayed and used the credit card." ECF No. [251–1] at 62 (emphasis added).[7] Also during his deposition, when asked about the "list of receipts and folios that were printing expiration dates during the December 2015 through April 6, 2016 time period," Mr. Ade testified this is "a list of—of individuals who had stayed at the hotel and used their credit card." _Id._ at 46. Although Plaintiff characterizes this list as one revealing more than 5,400 folios containing unmasked expiration dates during the class period, the record evidence demonstrates otherwise. That list is a record of each time a credit card transaction was processed at the Jupiter Beach Resort from December 22, 2015 through April 6, 2016. A transaction does not necessarily equal a FACTA violation as credit card transactions at the Jupiter Beach Resort could occur at numerous locations and only one of those locations experienced the Oracle software glitch.

According to Mike Walsh, at the Jupiter Beach Resort, receipts could be generated at the bar, the restaurant, the spa, the gift shop, the pool bar, the banquet areas, the front desk, or they could have been slipped under the hotel guest's door. _See_ ECF No. [290–13] at 149. With regard to any receipts generated at the bar, restaurant, gift shop, pool bar, and banquet areas, none of those

receipts were unmasking expiration dates. _Id._ Mr. Ade likewise confirmed this by explaining that an investigation was conducted to determine whether the receipts generated at the gift shop, restaurants and bar area at the Jupiter Beach Resort were masking expiration dates. _See_ ECF No. [251–1] at 63. The software used to generate receipts at these locations, POS, was different from the software used at the front desk, PMS. _Id._ Therefore, the receipts printed at these locations within the Jupiter Beach Resort were properly masking expiration dates. _Id._ According to Mr. Walsh, these transactions represent approximately 75 to 80 percent of the receipts. _See_ ECF No. [290–13] at 149.

As to the remaining folios reflecting a guest's hotel stay, Mr. Walsh admitted that the "front desk machine had a problem." _Id._ However, folios were not often printed at the front desk. _Id._ This is because hotel guests could check out in one of many ways. _Id._ A guest could receive a folio under his or her hotel room door, which was masking expiration dates, and then leave the property without ever requesting a printed folio at the front desk. _Id._ Mr. Ade confirmed that this is occurs in the majority of instances. _See_ ECF No. [251–1] at 46–47. Guests could have checked out on the TV in the hotel room and the folio on the screen would have masked the expiration dales. _See_ ECF No. [290–13] at 149. Guests could have also requested to review the final bill at the front desk without receiving a printed copy. _Id._ And finally, guests could have requested a printed copy of the folio at the front desk. _Id._ It is only this latter category of hotel guests who would have received the folio with the unmasked expiration dates. _Id._ Thus, the list of 5,400 credit card transactions does not provide a method by which to ascertain the class as only a limited sub-set of this class would have received a receipt with an unmasked expiration date.

deposition were not filed with the Court. _See_ ECF No. [290–8] at 257. Finally, Mr. Rich testified that he does not know whether the credit card transaction log represents a collection of folios and that lie did not see any _unmasked or masked_ folios during the relevant time period. _See_ ECF No. [290–9] at 81, 117–118. Thus, this testimony

does not demonstrate that the class is easily ascertainable.

7. Citations to depositions correspond to the page numbers of the transcript. They do not correspond with the CM–ECF page number.

Making the ascertainability of the class even more complicated is the fact that Defendants can no longer replicate or otherwise determine which credit card transactions resulted in a printed folio with an unmasked expiration date. *See* ECF No. [251–1] at 44–45. This is because once the PMS software was updated to correct the glitch, all folios printed at the front desk automatically mask the expiration date. *Id.* Without contemporaneously printed copies of the folios, which Defendants do not maintain, there is no way to determine which folios within the database were printed at the front desk. *Id.*

Plaintiff also relies upon the printed folios from the audit packs to argue the class is ascertainable. However, as Defendants point out, the audit packs are not evidence of a FACTA violation because there is no certainty the hotel guests received a copy of those folios. Mr. Ade testified that these audit pack documents, which indeed reveal unmasked expiration dates, "are specific instances where a person had called up and said I'm disputing a charge on my—say on my folio, they had an issue with the desk. Or said I didn't have breakfast. So then we print a copy of that folio and put it in the audit pack that night. And only those go in there, just those with an issue." ECF No. [251–1] at 45–46. The purpose of printing the folio is internal so that the night auditor can understand why the front desk clerk wrote off a certain sum from the bill. *Id.* at 54. Similarly, Mr. Walsh testified that these disputed folios within the audit pack are printed *after* the customer checks out. *See* ECF No. [290–13] at 157. Plaintiff does not point to any evidence demonstrating the hotel guests indeed received these folios, which is critical to the FACTA inquiry. The printing of the folio with the unmasked expiration does not by itself constitute a FACTA violation. *See* 15 U.S.C. § 1681c(g)(1)–(2). FACTA requires that the receipt be "provided to the cardholder at the point of the sale or transaction." *Id.* Although some subset of these disputed folios may have been provided to the cardholder at the point of sale if they requested a copy, other folios may not have been provided to the consumer.

 The Court recognizes that there are individuals who undeniably received folios at the front desk during the four-month period containing unmasked expiration dates. However, the Court is also mindful that "[a] class definition should be based on objective criteria so that class members may be identified without individualized fact finding." *Gist v. Pilot Travel Centers, LLC*, No. CIV.A. 5:08-293-KKC, 2013 WL 4068788, at *5 (E.D. Ky. Aug. 12, 2013). Here, the Court would have to make an individualized inquiry of each putative class member to determine whether he or she received any receipts or folios during their stay at the Jupiter Beach Resort, and if so, whether the receipt or folio was obtained from the front desk. Plaintiff has not provided the Court with any feasible method to determine the identity of the class members without resorting to this individualized inquiry. *Gist*, 2013 WL 4068788 (finding the putative class was not ascertainable in FACTA class action when it would require individualized inquiries to determine who is or is not within the class); *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 665 (N.D. Ala. 2010) (holding that the class was not ascertainable without conducting individualized inquiries when the defendant did not maintain a database or any paper record preserving information that would allow identification of any members of the proposed class). Thus, as to Jupiter Beach Resort, the Court finds that the class is not ascertainable. As to the other eleven hotels, the Court has even less of an ability to ascertain the identities of the class members as Plaintiff has provided absolutely no data, other than one folio from the Samoset Resort. Plaintiff does not even attempt to explain how the class is ascertainable as to the remaining eleven hotels.[8] For these reasons, Plaintiff has failed to make a showing that the members of the broader class or the subclass are ascertainable, making class certification improper.

8. Plaintiff's Combined Reply focuses the majority of its argument on why the Court should not consider the opinions from Defendants' expert, Erik Laykin. The Court, however, need not decide that issue at this juncture. The testimony from fact witnesses alone evidences the inability to easily identify the class members.

## D. Rule 23(a) Factors

Under Rule 23(a), Plaintiff is required to demonstrate each of the four factors: numerosity, commonality, typicality and adequacy. Defendants challenge all four of these factors. Although the Court has already determined that this case is not appropriate for class-action certification, the Court will nonetheless review the remaining factors

### a. Numerosity

 Under the first prong of the Rule 23(a) analysis, a plaintiff must demonstrate that the class is "so numerous that joinder of all members is impracticable." *Ruderman v. Washington Nat'l Ins. Co.*, 263 F.R.D. 670, 678 (S.D. Fla. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). "The focus of the numerosity inquiry is not whether the number of the proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Id.* at 679 (quoting *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D. Fla. 1986)). Generally speaking, the Eleventh Circuit has concluded that less than twenty-one class members is inadequate to satisfy the numerosity requirement but more than forty is adequate. *Id.* (quoting *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003). It is the plaintiff who "bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *See Vega*, 564 F.3d at 1267 (emphasis in original).

 Here, Plaintiff suggests that the numerosity requirement is easily satisfied because there were more than 5,000 credit card transactions during the four-month period in which the Oracle computer glitch was in effect at the Jupiter Beach Resort. *See* ECF No. [251]. Plaintiff also refers the Court to the 200 pages of hard copy folios from the audit packs at the Jupiter Beach Resort. *See* ECF No. [290] at 19. With regard to the subclass, which is limited to the alleged FACTA violations at the Jupiter Beach Resort, the Court finds that numerosity has indeed been satisfied. The Court recognizes, as it did above, that there is no evidence that the approximate 5,000 credit card transactions identified during the four-month span are indicative of a FACTA violation. This is because the universe of individuals receiving a FACTA violative receipt is limited to those guests who requested a folio at the front desk. However, with approximately 5,000 credit-card transactions, even if only 1% of the hotels guests requested a folio at the front desk, it would satisfy the numerosity requirement as the number would far exceed 40 potential plaintiffs. Additionally, Defendants cite to the report of their expert to demonstrate the lack of numerosity.[9] However, the report supports Plaintiff's position on this point in that Mr. Laykin estimates that 1,083 folios could have been printed with the unmasked expiration date at the Jupiter Beach Resort.[10] *See* ECF No. [281–1] at 24. Given the potential size of the subclass, the Court finds that it would be impractical to join such a large number of plaintiffs to this lawsuit, thereby satisfying the first factor as to the subclass.

As to the broader class, Plaintiff provides absolutely no data regarding the other eleven resorts. *Id.* Instead, Plaintiff makes it a foregone conclusion that numerosity has been established at the other resorts without making any showing whatsoever as to the number of potential FACTA violations at those locations. *Id.* Such a failure, however, is not fatal because the Jupiter Beach Resort is one of twelve resorts included in the broader class. Given that the data for the Jupiter Beach Resort is sufficient to establish numerosity for the subclass, that data likewise establishes numerosity for the broader class.

### b. Commonality

 The commonality requirement of Rule 23(a)(2) requires that there be "ques-

---

9. The Court is aware that Plaintiff has challenged the admissibility of this expert's report by way of a *Daubert* motion, which is currently pending. *See* ECF No. [298]. At this juncture, however, the Court need not decide the *Daubert* issue as class certification has been denied without any reliance upon Mr. Laykin's expert report.

10. Ironically, Plaintiff's Combined Reply criticizes Defendants' reliance upon Mr. Laykin's report even though the report itself admits the numerosity component for the subclass.

tions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof."). Plaintiff faces a "low hurdle" in bearing this "light" burden, as commonality "does not require that all questions of law and fact raised be common." *Williams*, 568 F.3d at 1356; *Vega*, 564 F.3d at 1268. "In short, the commonality requirement requires proof the court can resolve the questions of law or fact in 'one stroke.'" *Randolph*, 303 F.R.D. at 693. That said, "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quotation omitted). Commonality requires a common question capable of common resolution. *See, e g., Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 685 (S.D. Fla. 2013). "[C]ommonality merely requires that there be 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Randolph*, 303 F.R.D. at 693 (citing *Williams*, 568 F.3d at 1355).

▆ Plaintiff identifies three issues affecting all class members: (1) whether the folios constitute "receipts" under FACTA, (2) whether the folios printed for class members violated FACTA's truncation requirement, and (3) whether Defendants acted willfully under FACTA, which would entitle class members to recover statutory and punitive damages. *See* ECF No. [251] at 10. These issues affect both the broader class and the subclass. In their Response, Defendants merge the commonality analysis of Rule 23(a)(2) with the predominance analysis of Rule 23(b)(3), addressing both elements jointly. *See* ECF No. [281] at 16–18. In doing so, Defendants focus their analysis on whether Plaintiff's claims are subject to individualized inquiry. Such arguments, however, are more appropriate when considering whether Plaintiff has satisfied the predominance re-

quirement of Rule 23(b)(3). *See Randolph*, 303 F.R.D. at 693 (finding that a determination as to whether the issues were subject to individualized inquiry is more appropriate under Rule 23(b)(3)). As Defendants concede, the showing required under the commonality prong is less demanding than the predominance prong. *See* ECF No. [281] at 17, n. 19 (citing *Vega*, 564 F.3d at 1270)). For that reason, the Court will address Defendants' argument that the FACTA issues involved in this case are subject to individualized inquiry when analyzing Rule 23(b)(3) below. For purposes of commonality under Rule 23(a)(2), however, Plaintiff must only identify one issue whose resolution will affect all or a significant number of the putative class members. *See Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383, 390 (S.D. Fla. 2015) (finding that in a case in which the FACTA violations stemmed from a computer programming error common to all of Spirit's automated kiosks, common questions of law and fact included (1) the nature of the programming error; (2) when Spirit became aware of the programming error; (3) Spirit's culpability for the programming error, and (4) the legal effect of that culpability). Here, the Court finds that Plaintiff has presented three common issues of law or fact affecting all putative class members and has, therefore, satisfied Rule 23(a)(2).

### c. Typicality

▆ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is permissive; representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citing *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003)). In order to demonstrate typicality, the plaintiff must generally demonstrate that a "sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273

F.3d 1341, 1346 (11th Cir. 2001) (citing *Washington,* 959 F.2d at 1569 n. 8). Stated differently, "[t]he claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams,* 568 F.3d at 1356–57 (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)). "It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado–Steiman,* 221 F.3d at 1280. "If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." *Conigliaro v. Norwegian Cruise Line Ltd.,* No. 05-21584-CIV, 2006 WL 7346844, at *7 (S.D. Fla. Sept. 1, 2006) (quoting *Brooks v. S. Bell Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D. Fla. 1990)).

██ In the Motion, Plaintiff states that his claims are typical in that both he and the putative class members were subject to the same FACTA violative conduct. *See* ECF No. [251]. Defendants argue that no typicality exists because Plaintiff went to the Jupiter Beach Resort for the express purpose of obtaining a receipt with an unmasked expiration date and is, therefore, subject to unique defenses, such as assumption of the risk, standing, and unclean hands. *See* ECF No. [281] at 18. According to Defendants, the application of additional equitable defenses makes Plaintiff's claim atypical from the putative class members. Significantly though, none of the Defendants have pled the affirmative defenses of unclean hands or assumption of the risk in their respective pleadings. *See* ECF Nos. [119], [120], and [121]. To date, Defendants have not sought leave to amend to add those affirmative defenses either.[11] Rather, the claims advanced by Plaintiff, individually and on behalf of the putative

class, and the defenses asserted by Defendants are uniform, satisfying the typicality requirement.

### d. Adequacy

██ Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement 'encompasses two separate inquiries; (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003)); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 314–15 (S.D. Fla. 2001) ("Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class; and (2) class counsel possesses the competence to undertake the litigation."); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 727 (11th Cir. 1987) ("The inquiry into whether named plaintiffs will represent the potential class with sufficient vigor to satisfy the adequacy requirement of Rule 23(a)(4) most often has been described to involve questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class."). In addition, "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Creative Montessori Learning Centers v. Ashford Gear LLC,* 662 F.3d 913, 918 (7th Cir. 2011); *but see Busby,* 513 F.3d at 1323–24 ("[O]nly the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status.") (quoting *Halverson v. Convenient Food Mart, Inc.,* 458 F.2d 927, 932 (7th Cir. 1972)).

Defendants devote a significant portion of their briefs to attacking the motives of Plaintiff and class counsel in pursuing this FACTA lawsuit. Defendants characterize this law-

---

**11.** The Court has separately addressed the issue of standing in Section III(B).

suit as lawyer-driven class-action litigation and suggest that Plaintiff is simply a pawn with no real involvement or knowledge of the case. Put simply, the briefing, the suggestion of a future Rule 11 motion, and the colloquy in deposition transcripts suggests there is significant animosity between the attorneys as well as between the parties. Having determined that this case is not appropriate for class-action certification due to a lack of ascertainability, problems with the proposed class definition, and no showing of predominance or superiority, the Court need not decide the matter of adequacy and, therefore, declines Defendant's invitation to explore this unnecessary fray.

### E. Rule 23(b)(3)

To obtain class certification, Plaintiff must satisfy one of the three requirements enumerated in Rule 23(b). Because Plaintiff seeks to certify the class solely under Rule 23(b)(3), the Court limits its analysis to this subsection, which requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When analyzing predominance and superiority, the Court may consider the following factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*

#### a. Predominance

■ The Eleventh Circuit has characterized the predominance requirement as "perhaps the central and overriding prerequisite for a Rule 23(b)(3) class." *Vega,* 564 F.3d at 1278. To satisfy this requirement, the court must find that " 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.' " *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1557–58 (11th Cir. 1989)). The focus of this inquiry is on "the legal or factual questions that qualify each class member's case as a genuine controversy," making the showing "far more demanding" than the requirement of commonality in Rule 23(a)(2). *Id.* (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

■ Plaintiff's Motion argues that predominance has been established because two common questions will impact the entire class: (1) whether Defendants violated FACTA by systematically printing receipts revealing expiration dates and (2) whether Defendants acted willfully. *See* ECF No. [251] at 13–14. Defendants, on the other hand, argue that the issues framed by the pleadings require multiple individualized determinations, defeating the predominance requirement. *See* ECF No. [281] at 16–18. On the surface, it appears that common issues predominate. However, digging a little deeper and looking at the proof necessary to establish whether Defendants violated FACTA reveals that individualized inquiries will be at the forefront of this lawsuit, making this case unmanageable on a class-action basis.

■ As discussed above, Plaintiff is pursuing FACTA claims against OPL under a theory of direct liability and an alternate theory of apparent agency. Defendants argue that the latter theory poses a problem for purposes of class certification a problem that Plaintiff does not address in either the Motion or the Combined Reply. To prove apparent agency, Plaintiff must demonstrate: "(a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Carroll v. Diamond Resorts Mgm't,* No. 14-20649-CIV-WILLIAMS, 2015 WL

11202373, *5 (S.D. Fla. Oct. 19, 2015) (quoting *Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 121 (Fla. 1995)). Significantly, a finding of reliance requires that the finder of fact make an individualized inquiry as to each class member. *See Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2011 WL 67255, at *5 (E.D. Wis. Jan. 10, 2011) (finding that an apparent agency theory required individualized proof; therefore, common questions of fact did not predominate); *Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 444 (C.D. Cal. 2012) (holding that "an agency by estoppel theory would also require individualized proof" in that "the Court would need to determine whether his actions created the appearance of an agency relationship with Defendants and whether any third parties detrimentally relied on such apparent agency."); *Cannon v. GunnAllen Fin., Inc.*, No. 3:06-0804, 2008 WL 4279858, *9 (M.D. Tenn. Sept. 15, 2008) (internal citations omitted) ("As the first prong of the apparent authority test focuses on the action of the principal, not the proposed class or its members, the acquiescence showing could likely be made on a class-wide basis. The issues of good faith belief and reliance identified in the second and third prongs of the test, however, are issues that will require individualized proof"). Thus, for Plaintiff to prove OPL's FACTA liability under an apparent agency theory, he must present evidence that each class member knew about OPL's representations, each class member relied upon those representations, and then each class member changed his or her position based upon such individual reliance on OPL's representations. Plaintiff does not address this issue or otherwise explain how he intends to prove his theory of apparent agency against OPL without resorting to individualized proof. This is not a peripheral issue, but is instead a central issue to one of Plaintiff's theories of liability against OPL.

Another factual issue, which affects the predominance factor as to all Defendants, is whether each putative class member received a receipt that violated FACTA. For the reasons discussed in Section III(C) above, the inability to ascertain which class members identified on the credit card transaction log received a receipt with unmasked expiration dates requires a member-by-member inquiry to determine whether he or she indeed received a folio and, if so, whether that folio was obtained at the front desk. Absent such individualized evidence, the class members cannot establish a FACTA violation as they must prove the "receipt [was] provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). The need to perform such individualized inquiries holds true for the Jupiter Beach Resort and the other eleven resorts. Because the Court finds that individualized proof is necessary to determine whether Defendants are liable for a FACTA violation, Plaintiff has failed to demonstrate that common questions indeed predominate over individual ones and has, therefore, failed to satisfy the predominance requirement.[12] *See Ticknor v. Rouse's Enters., LLC*, 592 Fed.Appx. 276, 278 (5th Cir. 2014) ("[C]lass issues do not predominate [in a FACTA lawsuit] when 'transaction-by-transaction' determinations are required."); *Gist v. Pilot Travel Centers, LLC*, No. 5:08-293-KKC, 2013 WL 4068788, at *7 (E.D. Ken. Aug. 12, 2013) (finding that common questions do not predominate when the finder of fact must individually determine whether each consumer within the class was "provided" a receipt to establish a FACTA violation).

### b. Superiority

Finally, the Court must address whether maintenance of this action on a class-wide basis is superior to individual FACTA lawsuits. This inquiry requires the Court to decide whether a class action would be a manageable and efficient method to decide the disputed issues, requiring a comparison of the burden imposed by a class-action lawsuit versus individual claims. *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 678 (M.D. Fla. 2010). "However, the predomi-

---

**12.** Because the Court has already determined that Plaintiff failed to prove predominance for the two reasons stated above, the Court need not address Defendants' third argument regarding the differing management and ownership of the twelve hotels at issue in the broader class. *See* ECF No. [281] at 18.

nance analysis has 'a tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individualized issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.' " *Id.* (quoting *Williams,* 568 F.3d at 1358). If a district court finds the predominance requirement has been satisfied, "then a class action will likely be more manageable than and superior to individual actions." *Id.* On the other hand, a finding of superiority does not make up for the lack of predominance. *Id.*

■■■ Plaintiff argues that consumer class actions, including lawsuits prosecuting FACTA violations, are often deemed superior to individual lawsuits under Rule 23(b)(3). *See* ECF No. [251] at 14–15; ECF No. [290] at 20–22. While this may be true as a general proposition, the Court has grave concerns about the manageability of this FACTA class act ion, militating against a finding of superiority. This is because many of the core issues in this case will require individualized determinations as discussed above. The trial would require a substantial amount of evidence specific to each member of an unknown number of class members, imposing significant management difficulties on the Court. *See Vega,*

564 F.3d at 1278 ("Th[e] reality [of presenting a substantial amount of evidence specific to each class member] poses serious challenges to the efficiency and manageability of a class action proceeding."). Although the Court is mindful that class-action litigation allows putative class members with relatively small statutory damages to obtain counsel and prosecute those claims, this does not compensate for the potential burden imposed by the individualized proof required in this particular case. The Court, therefore, finds that Plaintiff has failed to prove superiority.

## IV. CONCLUSION

Having thoroughly reviewed the record and the parties' filings, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification, **ECF No. [251]**, is **DENIED.**

**DONE AND ORDERED** in Miami, Florida this 22nd day of September, 2017.