URSULA UNGARO, UNITED STATES DISTRICT JUDGE
THIS CAUSE is before the Court upon the following Motions:
(1) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, D.E. 54;
(2) Plaintiff's Motion for Partial Summary Judgment, D.E. 37; and
(3) Defendant's Motion for Summary Judgment, D.E. 41.
THE COURT has considered the Motion, the pertinent portions of the record and is otherwise fully advised of the premises. For reasons set forth below, Defendant's Motions, D.E. 54 and D.E. 41, are DENIED, and Plaintiff's Motion, D.E. 37, is GRANTED IN PART and DENIED IN PART.
I. Factual Background
Unless otherwise indicated, the following facts are undisputed.
Plaintiff, Javier Castellanos ("Plaintiff" or "Mr. Castellanos"), is a 25-year old male residing in Miami, Florida with his mother, Jacqueline Castellanos ("Ms. Castellanos"), and grandmother. D.E. 41-1 ¶ 1; D.E. 57-1 ¶ 1. Defendant is a Delaware corporation registered with the Florida Office of Financial Regulation as a consumer collection agency. ("Defendant" or "Portfolio Recovery"). D.E. 39 ¶ 2; D.E. 58-1 ¶ 2; D.E. 1 ¶¶ 4-5; D.E. 13 ¶¶ 4-5.
On or about September 30, 2014, Mr. Castellanos and Ms. Castellanos went into a Best Buy store and opened a Citibank, N.A./Best Buy credit card account, account number ending in 1153 (the "Account"). D.E. 41-1 ¶ 4; D.E. 57-1 ¶ 4. Mr. Castellanos and Ms. Castellanos charged $1,484.45 on the Account by purchasing various electronics, including a video game console and Samsung TV. D.E. 41-1 ¶ 5; D.E. 57-1 ¶ 5. Mr. Castellanos failed to pay the Account balance. D.E. 41-1 ¶ 6; D.E. 57-1 ¶ 6. Thereafter, the Account was charged-off by the original creditor and sold to Portfolio Recovery. D.E. 41-1 ¶ 6; D.E. 57-1 ¶ 6.
On November 16, 2016, Portfolio Recovery initiated a state court action against Mr. Castellanos styled Portfolio Recovery Associates, LLC v. Castellanos , Miami-Dade County Case Number 2016-011057-SP-25 to recover his unpaid Account balance (the "Small Claims Action"). D.E. 41-1 ¶ 7; D.E. 57-1 ¶ 7. In the Small Claims Action, Portfolio Recovery alleged a single claim for Account Stated, demanding $1643.52 owed to Portfolio Recovery by Mr. Castellanos since August 19, 2016. Case No. 2016-011057-SP-25, D.E. 1. In the Small Claims Action and in connection with the instant summary judgment briefing, Mr. Castellanos admitted that, as of November 16, 2016, he owed the entire Account balance sought by Portfolio Associates in the Small Claims Action. D.E. 41-1 ¶ 8; D.E. 57-1 ¶ 8.
On December 8, 2016, Neema R. Desai, Esq. ("Ms. Desai"), filed a Limited Notice of Appearance in the Small Claims Action on behalf of Mr. Castellanos, which stated: "Neema R. Desai, Esq. notifies the Court and all parties of its appearance as counsel of record for Defendant, Javier A. Castellanos, solely for the purpose of receiving *1304 pleadings EXCEPT for Service of Process." D.E. 41-5 p. 99.
Ms. Desai, acting as counsel on behalf of Mr. Castellanos, and Melanie S. Weseman, Esq., acting as counsel on behalf of Portfolio Recovery ("Ms. Weseman"), then engaged in numerous discussions to settle the Small Claims Action. On January 3, 2017, Myrna Nieves, Ms. Desai's paralegal ("Ms. Nieves"), prepared a check for $220.00 in settlement of the Small Claims Action and forwarded it to Ms. Weseman. D.E. 39 ¶ 10; D.E. 58-1 ¶ 10.
On January 6, 2017, Portfolio Recovery's state court counsel deposited the $220.00 check for payment of the settlement into a trust account. D.E. 39 ¶ 11; D.E. 58-1 ¶ 11. In addition, Mr. Castellanos contends, and Portfolio Recovery disputes, that on January 11, 2017, the parties signed a binding Stipulation for Settlement (the "Settlement Agreement"). D.E. 1-1; D.E. 39 ¶ 9. In short, Portfolio Recovery contends that the Settlement Agreement was non-binding because Mr. Castellanos and Portfolio Recovery's counsel, Ms. Weseman, signed the Settlement Agreement, but Ms. Desai did not. See D.E. 1-1; D.E. 39 ¶ 9; D.E. 58-1 ¶ 9.
According to Portfolio Recovery, sometime thereafter, Portfolio Associates received at least three "disputes" regarding the Account, including a January 27, 2017 dispute submitted via TransUnion (the "Dispute"). D.E. 41-1 ¶ 14; D.E. 57-1 ¶ 14.
On February 1, 2017, after receiving the Dispute, Portfolio Associates prepared and mailed a letter to Ms. Desai (the "Attorney Response Letter"). D.E. 41-1 ¶ 17; D.E. 51-1 ¶ 17. Just before mailing the Attorney Response Letter, Portfolio Associates also prepared a January 30, 2017 accounting of the Account (the "Accounting"). D.E. 41-1 ¶ 8; D.E. 51-1 ¶ 8.
There is no dispute that the Attorney Response Letter was sent directly to Ms. Desai on or about February 1, 2017; however, in their respective summary judgment motions, the parties raise arguments concerning: (1) whether the Attorney Response Letter was an attempt to collect a debt; (2) whether Portfolio Recovery had any legal right to collect a debt from Mr. Castellanos; and (3) if Portfolio Recovery did not have the legal right to collect from Mr. Castellanos, whether Portfolio Recovery committed a bona fide error in seeking to collect. D.E. 41-1 ¶ 17; D.E. 57-1 ¶ 17; D.E. 39 ¶ 14; D.E. 58-1 ¶ 14; D.E. 41; D.E. 57; D.E. 64; D.E. 38; D.E. 58; D.E. 65.
In addition, in their respective summary judgment motions, the parties present arguments concerning whether the January 30, 2017 Accounting was sent directly to Mr. Castellanos, instead of to Ms. Desai, at a time when Portfolio Recovery knew that Mr. Castellanos was represented by Ms. Desai. D.E. 41-1 ¶¶ 18-19; D.E. 57-1 ¶¶ 18-19. In other words, Mr. Castellanos contends that he received the Accounting directly from Portfolio Recovery, whereas Portfolio Recovery contends that the Accounting was only sent to Ms. Desai as a single enclosure to the Attorney Response Letter. D.E. 41-1 ¶¶ 18-19; D.E. 57-1 ¶¶ 18-19.
On February 16, 2017, Portfolio Recovery voluntarily dismissed the Small Claims Action. D.E. 41-1 ¶41; D.E. 57-1 ¶ 41.
II. Procedural Background
Based on this underlying conduct, on February 15, 2017, Mr. Castellanos filed the instant action, alleging that Portfolio Recovery violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA") and Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq. (the "FCCPA"), by: (1) improperly sending the Accounting directly to Mr. Castellanos-rather than to Mr. Castellanos' counsel; and (2) sending the *1305 Attorney Response Letter to Ms. Desai to collect a debt that Portfolio Recovery had no legal right to collect, as the parties allegedly entered into a binding agreement to settle Mr. Castellanos' outstanding debt. D.E. 1.
In particular, Mr. Castellanos alleges the following four claims: (1) communication with a consumer represented by counsel, in violation of 15 U.S.C. § 1692c(a)(2) (Count I); (2) collecting a debt previously paid, in violation of 15 U.S.C. § 1692e(2) (Count II); (3) communication with a consumer represented by counsel, in violation of Fla. Stat. § 559.72(18) (Count III); and (4) collecting a debt previously paid, in violation of Fla. Stat. § 559.72(9) (Count IV).
On April 3, 2017, Portfolio Recovery filed its Answer and Affirmative Defenses to Mr. Castellanos' Complaint. D.E. 13. On May 3, 2017, the Court issued its Scheduling Order for Pretrial Conference and Trial which, among other things, set a June 2, 2017 deadline to amend pleadings, September 1, 2017 discovery cut-off, and September 22, 2017 dispositive motion deadline. D.E. 15.
On September 22, 2017, Mr. Castellanos the instant Motion for Partial Summary Judgment, D.E. 37, and Portfolio Recovery also filed its instant Motion for Summary Judgment, D.E. 41. On September 29, 2017, Portfolio Recovery also moved to dismiss this action, in its entirety, for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(h)(3), on grounds that Mr. Castellanos failed to plead concrete injury-in-fact required to alleged Article III standing.
The Court will first address Portfolio Recovery's Motion to Dismiss for Lack of Subject Matter Jurisdiction, D.E. 54, and then address the parties' competing summary judgment motions, D.E. 37 and D.E. 41.
III. Discussion
A. Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 54)
Defendant argues that the Court should dismiss this case, in its entirety, because Plaintiff lacks Article III standing to bring the instant action. D.E. 54.
i. Legal Standard
As set forth by the Supreme Court in Spokeo, Inc. v. Robins , standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " Id. at 1548 (quoting Lujan v. Defs. of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." Id. (quotations omitted). For the injury to be "concrete," it must be "real," and not "abstract;" however it need not be "tangible." Id. at 1548-49.
In addition, the Supreme Court in Spokeo recognized that "Congress may 'elevate to the status of legally cognizable injuries, concrete, de facto injuries that were previously inadequate in law." 136 S.Ct. at 1549 (quoting Lujan , 504 U.S. at 578, 112 S.Ct. 2130 ). "In other words, the Supreme Court recognized where Congress has endowed plaintiffs with a substantive legal right, as opposed to creating a procedural requirement, the plaintiffs may sue to enforce such a right without establishing additional harm." Guarisma v. Microsoft Corp. , 209 F.Supp.3d 1261, 1265 (S.D. Fla. July 26, 2016) (emphasis in original).
*1306 Recently, the Eleventh Circuit held that a plaintiff bringing a claim under the Fair Debt Collections Practices Act ("FDCPA") had Article III standing, even without actual damages, because: "(1) in enacting the FDCPA, Congress created a substantive right to receive the required disclosures in relevant communications; and (2) the defendant violated this substantive right by failing to provide such disclosures." Church v. Accretive Health, Inc. , 654 Fed.Appx. 990, 994-95 (11th Cir. 2016) ).
ii. Analysis
Defendant argues that Plaintiff lacks article standing because "Plaintiff alleges that Defendant violated the FDCPA and FCCPA by sending him a single letter, but does not explain how he was harmed as a result of receiving the letter." D.E. 54 p. 4. In other words, Defendant contends that Plaintiff fails to meet his burden of showing a concrete injury-in-fact because Plaintiff only alleges technical violations of the FDCPA and FCCPA-without alleging how or whether these technical violations caused Plaintiff actual harm. Id. pp. 3-5.
Plaintiff argues that he has Article III standing for two reasons. First, Plaintiff argues that he alleges: "(1) that Defendant contacted a consumer known to be represented by counsel; and (2) that Defendant mischaracterized the nature of the debt by sending two letters, the first, dated January 30, 2017, directly to the Plaintiff that sought to collect a balance of $1423.52 after the debt had been fully settled, and the second, dated February 1, 2017, to his legal counsel that claimed a balance owed of $1423.52 ... [which was] three weeks after the debt had been fully settled." D.E. 66 p. 5.
Second, Plaintiff argues that the FDCPA and FCCPA confer on borrowers, such as Plaintiff, "the right to a truthful disclosure of the amount of the debt ... and the false representation of that amount is a sufficiently concrete violation to survive a challenge" on Article III standing. Id. In other words, because the FDCPA provides a private right of action authorizing debtors to file suit for a debt collector's failure to comply with the FDCPA, Plaintiff has Article III standing to sue for a technical violation of the statute. Id. pp. 6-8.
The Court agrees with Plaintiff. In the unpublished decision Church v. Accretive Health, Inc. , the Eleventh Circuit held that a debtor had shown concrete injury-in-fact where she alleged that a letter sent to her "did not contain all of the FDCPA's required disclosures" because the FDCPA gives debtors a "statutorily-created right to information pursuant to the FDCPA." Church , 654 Fed.Appx. at 994-995. In other words, the debtor "sufficiently alleged that she has sustained a concrete-i.e. , "real"-injury because she did not receive the allegedly required disclosures," and "[t]he invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled." Id. at 995. Thus, while the debtor's "injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete." Id.
The Court agrees with the reasoning in Church and, in addition, agrees with decisions from virtually every court in this Circuit, which uniformly apply Church to hold that debtors have Article III standing where they allege technical FDCPA violations because the FDCPA creates various substantive rights on behalf of debtors contacted by debt collectors. Bryant v. Aargon Collection Agency, Inc. , No. 17-CV-14096, 2017 WL 2955532, at *3 (S.D. Fla. June 30, 2017) (denying motion to dismiss for lack of standing where debtor *1307 brought FDCPA claim alleging violations of her statutory right to receive certain disclosures in communications from debt collectors); Michael v. HOVG, LLC , 232 F.Supp.3d 1229, 1235 (S.D. Fla. 2017) (denying motion to dismiss for lack of standing where debtor brought FDCPA claim alleging violations of the FDCPA based on "false representation or deceptive means" or "unfair or unconscionable practices" under 1692e(10) and 1692f); Daniel Lee v. Select Portfolio Servicing, Inc. , No. 116CV01080CAPWEJ, 2016 WL 9275411, at *6 (N.D. Ga. Aug. 25, 2016), report and recommendation adopted , No. 1:16-CV-1080-CAP, 2016 WL 9308541 (N.D. Ga. Sept. 15, 2016) ("Plaintiff has successfully alleged a concrete injury. As to the June Letter, plaintiff alleged that he did not receive disclosures required under the FDCPA, specifically a disclosure from SPS that it was a debt collector, because that disclosure was not in a sufficiently obvious location. Taking plaintiff's allegations as true, he did not receive the disclosure. Thus, Mr. Lee has sufficiently alleged that he did not receive the required disclosure, just as the plaintiff in Church did not receive the disclosure at issue in that case until thirteen days after they were required. The invasion of Mr. Lee's right to receive the § 1692e(11) disclosure is an injury, just as it was for the plaintiff in Church ."); Hall v. Global Credit & Collection Corp. , 2016 WL 4441868, at *3-4 (M.D. Fla. Aug. 23, 2016) (holding that the plaintiff alleged a concrete injury by alleging that the defendant violated her statutory rights under the FDCPA); Dickens v. GC Servs. Ltd. P'ship , No. 8:16-CV-803-T-30TGW, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016) ; Thorne v. Accounts Receivable Mgmt., Inc. , No. 11-22290-CIV, 2012 WL 3108662, at *6 (S.D. Fla. July 24, 2012) ("The FDCPA, expressly designed to protect consumers against unscrupulous debt collection practices, defines a legally protected interest of consumers against such practices, and a violation of the FDCPA's provisions invades that interest. Thus, Thorne has more than a mere financial stake in this litigation; she claims a distinct and palpable injury-in-fact based on her receipt of a message that violated her legally-protected interest under the FDCPA. Accordingly, Thorne does not lack Article III standing.").
Based on well-settled case law, the Court concludes that Plaintiff has, without question, pleaded a concrete injury, such that Plaintiff has Article III standing. Church , 654 Fed.Appx. at 994-995 ; Bryant , 2017 WL 2955532, at *3 ; Michael , 232 F.Supp.3d at 1235 ; Daniel Lee , 2016 WL 9275411, at *6 ; Hall , 2016 WL 4441868, at *3-4 ; Dickens , 2016 WL 3917530, at *2. Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, D.E. 54, is DENIED.
B. Parties' Competing Summary Judgment Motions (D.E. 37 and D.E. 41)
i. Legal Standard
Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 ; Adickes v. S.H. Kress & Co. , 398 U.S. 144, 175, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. Adickes , 398 U.S. at 157, 90 S.Ct. 1598 ; Rojas v. Florida , 285 F.3d 1339, 1341-42 (11th Cir. 2002).
The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving *1308 party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Poole v. Country Club of Columbus, Inc. , 129 F.3d 551, 553 (11th Cir. 1997) ; Barfield v. Brierton , 883 F.2d 923, 933-34 (11th Cir. 1989).
If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. Environmental Def.Fund v. Marsh , 651 F.2d 983, 991 (5th Cir. 1981).[1] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co. , 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc. , 669 F.2d 1026, 1031 (5th Cir. 1982) ; see also Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").
Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. Adickes , 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. Brunswick Corp. v. Vineberg , 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. Liberty Lobby, Inc. , 477 U.S. at 255, 106 S.Ct. 2505.
ii. Analysis
a. Claims for Communication with Consumer Represented by Counsel in Violation of 15 U.S.C. § 1692c(a)(2) (Count I) and Fla. Stat. § 559.72(18) (Count III)
Both parties move for summary judgment on Counts I and III, which are brought under 15 U.S.C. § 1692c(a)(2) and Fla. Stat. § 559.72(18). 15 U.S.C § 1692c(a)(2) provides:
(a) Communication with the consumer generally
Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt-
...
(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or
15 U.S.C. § 1692c(a)(2). In addition, Fla. Stat. § 559.72(18) provides:
*1309 In collecting consumer debts, no person shall:
...
(18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.
Fla. Stat. § 559.72(18).
Courts have interpreted Sections 1692c(a)(2) and 559.72(18) in similar fashion. In particular, both statutes require a debtor demonstrate that a debt collector "knows" or has "knowledge" that the consumer is represented by an attorney "with respect to" a debt. 15 U.S.C. § 1692c(a)(2) ; Fla. Stat. § 559.72(18). With respect to both Section 1692c(a)(2) and 559.72(18), courts have uniformly interpreted the knowledge requirement to require that a debt collector have "actual knowledge" of attorney representation "with respect to" the specific account at issue. Wolhuter v. Carrington Mortgage Services, LLC , 2015 WL 12819153, at *4-5 (M.D. Fla. Oct. 28, 2015) (( 15 U.S.C. § 1692c(a)(2) requires proof of "actual knowledge on the part of the debt collector" that the borrower was represented by counsel with respect to debt at issue in FDCPA suit); Nordwall v. PNC Mortgage , 2015 WL 4095350, at *3 (M.D. Fla. July 7, 2015) (same); Bacelli v. MFP, Inc. , 729 F.Supp.2d 1328, 1343 (M.D. Fla. 2010) (same); Suszko v. Specialized Loan Servicing, LLC , No. 8:16-CV-2333-T-36AAS, 2016 WL 7440953, at *3 (M.D. Fla. Dec. 27, 2016) ( Fla. Stat. § 559.72(18) requires actual knowledge "that the debtor is represented by an attorney with respect to such debt"); Erickson v. General Electric Co. , 854 F.Supp.2d 1178, 1182 (M.D. Fla. 2012) (same).
i. Parties' arguments
Defendant argues that it is entitled to summary judgment with respect to Counts I and III for two reasons. First, Defendant argues that even if it communicated directly with Plaintiff, in violation of 15 U.S.C. § 1692c(a)(2) and Fla. Stat. § 559.72(18), there is insufficient evidence which, viewed in the light most favorable to Plaintiff, would permit a reasonable jury to conclude that Defendant had actual knowledge that Plaintiff was represented by counsel with respect to the debt at issue in this case. D.E. 41 pp. 6-7. In particular, Defendant argues that the only evidence to indicate that Defendant actually knew that an attorney represented Plaintiff with respect to Plaintiff's $1,423.52 debt was Ms. Desai's December 8, 2016 Limited Notice of Appearance in the Small Claims Action, which: (1) expressly limited Ms. Desai's representation to "receiving pleadings EXCEPT for Service of Process;" and (2) did not explicitly mention the $1,423.52 debt. D.E. 41 p. 6 (citing D.E. 41-5 at 15:1-19, 99). Thus, Defendant argues that the Limited Notice of Appearance, standing alone, does not create a reasonable inference that Defendant had actual knowledge that Ms. Desai, or any other lawyer, represented Plaintiff with respect to Plaintiff's $1,423.52 debt; instead, the notice merely placed Defendant on notice that Ms. Desai wished to receive pleadings-or the complaint, answer and reply-pertaining to the Small Claims Action. Id.
Second, Defendant argues that even if a reasonable jury would conclude that Defendant had actual knowledge that Ms. Desai represented Plaintiff with respect to the debt at issue, the undisputed evidence, based entirely on the testimony of Janet Marie Cadell, Defendant's dispute specialist ("Ms. Cadell"), "established that Defendant *1310 did not mail the Accounting directly to Plaintiff." D.E. 41 p. 8; D.E. 41-1 ¶ 20; D.E. 41-3 at 28:3-19.
In contrast, Plaintiff argues that it is entitled to summary judgment with respect to Counts I and III for two reasons. First, Plaintiff argues that Defendant had actual knowledge that Plaintiff was represented by counsel, with respect to Plaintiff's $1,423.52 debt, because "Defendant was aware that Plaintiff was represented by Attorney Neema Desai beginning on December 8, 2016, the day that its state court attorney received Desai's Limited Notice of Appearance." DE. 65 p. 3. In other words, Plaintiff contends that Defendant had actual knowledge that Ms. Desai represented Plaintiff with respect to the $1,423.52 debt because: (1) Ms. Desai filed a Limited Notice of Appearance in the Small Claims Action: (2) Ms. Desai negotiated the Settlement Agreement in the Small Claims Action with Porfolio Recovery's counsel; and (3) as such, Defendant executed the Settlement Agreement, sent it to Ms. Desai, and listed Ms. Desai in the signature block of the Settlement Agreement. D.E. 65 p. 3.
Second, Plaintiff argues that the undisputed evidence shows that Defendant sent a letter directly to Plaintiff, on or about January 30, 2017, which sought to collect the $1423.52 debt. D.E. 38 p. 3. In support, Plaintiff relies on Defendant's Answer and Affirmative Defenses, which admitted Plaintiff's allegation that "[o]n or about January 30, 2017, Defendant sent a letter directly to Plaintiff seeking to collect a balance of $1423.52," D.E. 1 ¶ 16; D.E. 13 ¶ 16, as well as the Declaration of Ms. Castellanos, D.E. 36-1 ¶¶ 3-4, in which Ms. Castellanos stated that she "received, via U.S. Mail, the attached [Accounting] letter from Portfolio Recovery Associates, LLC addressed to my son."
ii. Court's ruling
The Court concludes that Plaintiff is entitled to summary judgment with respect to Counts I and III.[2]
To prevail on a claim under 15 U.S.C. § 1692c(a)(2) or Fla. Stat. § 559.72(18), a debtor must prove that: (1) a debt collector communicated with a consumer; (2) in connection with the collection of a debt; (3) where the debt collector had actual knowledge that the consumer is represented by an attorney with respect to such debt; and (4) the debt collector had knowledge, or could readily ascertain, the attorney's name or address. 15 U.S.C. § 1692c(a)(2) ; Wolhuter v. Carrington Mortgage Services, LLC , 2015 WL 12819153, at *5 (M.D. Fla. 2015).
Plaintiff is entitled to summary judgment with respect to Counts I and III for four reasons. First, there is no genuine dispute that Defendant is a debt collector and Plaintiff is a consumer, as defined by the FDCPA and FCCPA. 15 U.S.C. § 1692a(3) ; 15 U.S.C. § 1692a(6) ; Fla. Stat. § 559.55(8) ; Fla. Stat. § 559.55(7) ; D.E. 60 p. 4, ¶ 5(a); D.E. 1 ¶ 8; D.E. 13 ¶ 8; D.E. 1 ¶ 3; D.E. 13 ¶ 3.
Second, there is no dispute that Defendant directly communicated with Plaintiff with respect to collecting the debt at issue in this case. In short, Defendant plainly admitted in its Answer and Affirmative Defenses that the Accounting was inadvertently mailed to Plaintiff. In Paragraph 16 of Plaintiff's Complaint, Plaintiff alleges: "On or about January 30, 2017, Defendant *1311 sent a letter directly to Plaintiff seeking to collect a balance of $1423.52. A copy of the letter from Defendant to Plaintiff is attached as Exhibit 'C.' " D.E. 1 ¶ 16. In Defendant's Answer and Affirmative Defenses, Defendant responds: "Objection. The allegations contained in paragraph 16 of the Complaint call for legal conclusions to which no response is required. If a response is required, Defendant admits that the letter was inadvertently mailed to Plaintiff. However, Defendant denies that it has violated or is liable for violating the FDCPA, FCCPA, or any other law." D.E. 13 ¶ 16 (emphasis added).
Under Federal Rule Civil Procedure 8(b), parties "must ... admit or deny the allegations asserted against it by an opposing party." See Fed. R. Civ. P. 8(b)(1); Ashley v. Jaipersaud , 544 Fed.Appx. 827, 828-29 (11th Cir. 2013). When, as here, a responsive pleading is required and an "allegation is not denied," such allegation "is admitted." See Fed. R. Civ. P. 8(b)(2) & (6); Ashley , 544 Fed.Appx. at 828-89 ; see also Burlington N.R. Co. v. Huddleston, 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer ... denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually."). Moreover, "[o]nce [a judicial admission is] made, the subject matter ought not be reopened in the absence of a showing of exceptional circumstances, but a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and the party was laboring under a mistake when he made the admission." Palm Beach Int'l, Inc. v. Salkin , No. 10-60995-CIV, 2010 WL 5418995, at *6 (S.D. Fla. Dec. 23, 2010).
Here, Defendant plainly admitted that it inadvertently mailed the January 30, 2017 Accounting directly to Plaintiff, rather than to Plaintiff's counsel; thus, Defendant has "made a judicial admission" that the Accounting was mailed directly to Plaintiff, rather than to Plaintiff's counsel. D.E. 1 ¶ 16; D.E. 13 ¶ 16; Ashley , 544 Fed.Appx. at 828-29 ; Huddleston , 94 F.3d at 1415 ; In re Summit United Serv., LLC , No. ADV. 03-6247, 2005 WL 6488106, at *4 (Bankr. N.D. Ga. Sept. 19, 2005). In addition, Defendant offers no reason whatsoever, much less show exceptional circumstances, warranting relief from Defendant's judicial admission. In fact, all Defendant does is rely on testimony from Ms. Cadell, Defendant's dispute specialist, that she mailed the Accounting to "[w]hatever the office was that he [Plaintiff] had representing him," which is insufficient to disavow Defendant's prior admission. D.E. 41-3 at 23:3-19; Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc. , 713 F.2d 618, 621 (11th Cir. 1983) ("Judicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." (internal citations omitted)); Columbus Bank & Tr. Co. v. McKenzie Trucking & Leasing LLC , No. 4:07-CV-189 (CDL), 2009 WL 3526648, at *3 (M.D. Ga. Oct. 23, 2009) ("Even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions. " (citing Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990) (emphasis added)); Davis v. A.G. Edwards & Sons, Inc. , 823 F.2d 105, 107-08 (5th Cir. 1987) (holding that a "factual dispute does not render summary judgment inappropriate [because] [i]rrespective of which document contains the more accurate account, the Davises are bound by the admissions in *1312 their pleadings, and thus no factual issue can be evoked by comparing their pleadings with Dr. Davis' affidavit"); Faraday Capital Ltd. v. 325 Goodrich Ave., LLC , No. 5:10-CV-278 CAR, 2012 WL 2990379, at *7 (M.D. Ga. July 20, 2012) ("Accordingly, because it is undisputed that Goodrich denied an agency relationship in its Complaint, Goodrich is now estopped from arguing on summary judgment that CRC is its agent and had a duty to procure insurance."); Columbus Bank & Tr. Co. v. McKenzie Trucking & Leasing LLC , No. 4:07-CV-189 (CDL), 2009 WL 3526648, at *9 (M.D. Ga. Oct. 23, 2009) ("Here, Synovus has carried its burden to 'show that there is no genuine issue of material fact' as to whether Campbell executed the Guaranty. By Campbell's admission in his Answer, this fact has been conclusively established. Thus, Campbell's subsequent attempt to controvert this undisputed fact is unavailing.").
Third, there is no genuine issue of material fact that Defendant had actual knowledge that Ms. Desai represented Plaintiff with respect to the debt at issue in this case, as there is no genuine dispute of material fact that: (1) Ms. Desai filed a Limited Notice of Appearance in the Small Claims Action; (2) Ms. Desai negotiated the settlement of the Small Claims Action with Portfolio Recovery, which included resolving Plaintiff's $1,423.52 debt; (3) Ms. Desai's name is included in the signature block of the Settlement Agreement, which was drafted by Portfolio Recovery itself; and (4) Defendant addressed and mailed two separate letters after transmission of the settlement check to Ms. Desai concerning Plaintiff's debt. These facts conclusively show that Defendant actually knew that Ms. Desai represented Plaintiff with respect to the $1,423.52 debt at issue in this case when it mailed the Accounting to Plaintiff. D.E. 1-4; D.E. 41-6 at 12:23-13:8, 21:3-8, 21:23:30, 24:1-27:3, 61:2-63:4, 99, 105-107; see, e.g. , Nordwall v. PNC Mortg. , No. 2:14-CV-747-FTM-CM, 2015 WL 4095350, at *3 (M.D. Fla. July 7, 2015) (finding that notice of appearance combined with cease-and-desist letter listing two attorneys' names, as well as numerous other email correspondence, "put Defendant on notice that Plaintiff was represented by counsel"); see also Carbonell v. Frederick J Hannah & Assocs., P.C. , No. 1:14-CV-21689-UU, 2014 WL 12580524, at *2 (S.D. Fla. Aug. 1, 2014) (dismissing FDCPA and FCCPA claims with leave to amend where plaintiff alleged that his creditor had actual knowledge that "Plaintiff was represented by an attorney because he had entered notices of appearance in her state court cases" against other creditors, as plaintiff did not link the other creditors to the defendant in the instant case); but see Wolhuter, LLC , 2015 WL 12819153, at *5 (dismissing FDCPA and FCCPA claims where the plaintiff was represented by counsel in a foreclosure case against a different defendant, as there was nothing to indicate that the defendant in Wolhuter knew that the notice of appearance in the foreclosure case "was so broad as to put CMS on notice that she was [also] represented with respect to any other matter than the foreclosure case").
Lastly, the Court rejects Defendant's argument, which is unsubstantiated by record evidence, that Plaintiff consented to being directly contacted by Portfolio Recovery by allegedly sending a dispute to TransUnion-a third-party credit reporting agency-as Defendant does not cite to, and the Court has been unable to find any: (1) case law to support Defendant's contention that disputing a debt by communicating with a credit agency constitutes consent to be contacted directly, rather than through retained counsel, under either the FDCPA or FCCPA; and (2) record evidence to indicate that Plaintiff had severed his relationship with Ms. Desai or, alternatively, *1313 record evidence based on which Portfolio Recovery could have reasonably concluded that Plaintiff severed his relationship with Ms. Desai, such that Plaintiff consented to being directly contacted by Defendant concerning the debt at issue in this case. D.E. 41; D.E. 41-1 through D.E. 41-13; D.E. 58; D.E. 58-1; D.E. 64; D.E. 64-1; D.E. 64-2. In other words, Defendant's argument that Plaintiff consented to being directly contacted by Defendant is just that-mere argument unsupported by case law or record evidence. Thus, it is insufficient to defeat summary judgment. See, e.g. , Holifield v. Reno , 115 F.3d 1555, 1564 (11th Cir. 1997) (holding that "conclusory assertions ... in the absence of supporting evidence, are insufficient to withstand summary judgment).
Thus, Plaintiff is entitled to summary judgment with respect to Counts I and III, subject to Defendant's ability to prove its bona fide error defense at trial.
b. Claims for Collecting a Debt Previously Paid in Violation of 15 U.S.C. § 1692e(2) (Count II) and Fla. Stat. § 559.72(9) (Count IV)
Both parties move for summary judgment on Counts II and IV, which are brought under 15 U.S.C. § 1692e(2) and Fla. Stat. § 559.72(9). 15 U.S.C § 1692e(2) provides:
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
...
(2) The false representation of-
(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
15 U.S.C. § 1692e(2). In addition, Fla. Stat. § 559.72(9) provides:
In collecting consumer debts, no person shall:
...
(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.
Fla. Stat. § 559.72(9).
Under 15 U.S.C. § 1692e(2), a debt collector is liable where it attempts to collect a debt and, in doing so, falsely represents the "character, amount, or legal status" of the alleged debt. Bohringer v. Bayview Loan Servicing, LLC , 141 F.Supp.3d 1229, 1234 (S.D. Fla. 2015).
Similarly, a debt collector is liable under Fla. Stat. § 559.72(9) by claiming, attempting or threatening to enforce a debt that it is not entitled to collect. However, unlike 15 U.S.C. 1692e(2), Fla. Stat. § 559.72(9) also requires that the debt collector have actual knowledge that the debt collector did not, in fact, have the right to collect the alleged debt. Williams v. Educational Credit Mgmt Corp. , 88 F.Supp.3d 1338, 1347-48 (M.D. Fla. 2015) ; Mesa v. Law Enf't Sys., LLC , No. 15-21089-CIV, 2015 WL 12804525, at *5 (S.D. Fla. Aug. 4, 2015) ("For example, section 559.72(9) requires not only the debt be invalid, but also the debt collectors must affirmatively know it is invalid.").
Here, Plaintiff alleges claims under 15 U.S.C. § 1692e(2) and Fla. Stat. § 559.72(9) based entirely on allegations that Defendant attempted to collect a debt that had already been paid pursuant to a settlement agreement, D.E. 1 ¶¶ 26, 34. In addition, to satisfy the requirements of Fla. Stat. § 559.72(9), Plaintiff also alleges that Defendant actually knew that the *1314 amount sought to be collected was "not valid," D.E. 1 ¶ 34.[3]
i. Parties' arguments
Defendant argues that it is entitled to summary judgment with respect to Counts II and IV for three reasons. First, Defendant contends that there is no genuine issue of material fact that the Small Claims Action remained pending-and the parties' settlement agreement was not yet final-on February 1, 2017, when Defendant mailed the Attorney Response Letter. D.E. 41 pp. 10-11. In other words, Defendant did not attempt to collect an illegitimate debt, as the Attorney Response Letter accurately summarized the Account balance as of the day it was sent. Id.
Second, Defendant argues that the Attorney Response Letter did not violate the FDCPA or FCCPA because the letter, viewed in the light most favorable to Plaintiff, was not an attempt to collect any debt, but was rather "intended solely to provide information responsive to the specific Dispute received by Defendant that the Account did not belong to Plaintiff." D.E. 41 p. 11.
Lastly, Defendant argues that, in any event, it is entitled to summary judgment with respect to Plaintiff's FCCPA claim, brought in Count IV, because Fla. Stat. § 559.72(9), like Fla. Stat. § 559.72(18), requires proof of "actual knowledge," and a reasonable jury could not conclude that Defendant had "actual knowledge" that the Account and settlement had been finalized. D.E. 41 pp. 11-12. In support, Defendant relies on two undisputed facts: (1) that the Account was coded in Defendant's system as a "soft settlement code indicating that the settlement had not yet been finalized;" and (2) that Lauren Cordova, Defendant's Senior Legal Clerk ("Ms. Cordova"), sent an email to Defendant's lawyers in the Small Claims Action, including Ms. Weseman of the law firm Pollack & Rosen, P.A. ("Pollack"), on February 15, 2017, to check the status of the potential settlement of the Small Claims Action, because Ms. Cordova "could not tell whether the Account had been settled in full based on the codes contained in PRA's Account records." D.E. 41 pp. 11-12; D.E. 41-8. In short, Defendant argues that because of the way in which it chose to code the status of Plaintiff's debt, Defendant did not-and could not-know that the parties had settled Plaintiff's debt by the time that Defendant sent the February 1, 2017 Attorney Response Letter to Ms. Desai. D.E. 41 pp. 11-12.
In contrast, Plaintiff argues that he is entitled to summary judgment with respect to Counts II and IV, as Defendant's February 1, 2017 Attorney Response Letter and February 16, 2017 letter[4] were *1315 both sent after Defendant either knew or should have known that Plaintiff and Defendant had settled Plaintiff's debt because the undisputed facts show that: (1) Plaintiff tendered payment, pursuant to the Settlement Agreement, on January 9, 2017; (2) Defendant updated its computer system by January 23, 2017, at the latest, to include a settlement code with respect to Plaintiff's debt; and (3) Defendant had "direct possession of the executed, state court settlement agreement between the parties [before] February 1, 2017." D.E. 38 pp. 7-8.
ii. Court's ruling
The Court concludes that Plaintiff is entitled to summary judgment with respect to Counts II and IV, subject to Defendant's bona fide error defense.
To prevail on a claim under 15 U.S.C. § 1692e(2), a debtor must prove that a debt collector made a false representation of the "character, amount, or legal status of any debt" or false representation of "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2) ; Fonseca v. Focus Financial Servs. , No. 15-80410-CIV, 2016 WL 4146663, at * 1 (S.D. Fla. Aug. 1, 2016). Similarly, a debtor proceeding under Fla. Stat. § 559.72(9) must prove that a debt collector: (1) claimed, attempted or threatened to enforce a debt; and (2) had actual knowledge that the debt collector did not have a legitimate "or some other legal right" to collect such debt. Fla. Stat. § 559.72(9) ; Sellers v. Rushmore Loan Mgmt. Servs., LLC , No. 3:15-CV-1106-J-32PDB, 2017 WL 1683613, at *7 (M.D. Fla. May 3, 2017).
Plaintiff is entitled to summary judgment with respect to Counts II and IV for three reasons. First, there is no genuine dispute of material fact that Defendant's February 1, 2017 Attorney Response Letter constituted an attempt to collect debt and was not, as Portfolio Recovery argues, simply information provided to Mr. Castellanos upon Mr. Castellanos' request. The Eleventh Circuit has made clear that a letter constitutes an attempt to collect a debt, for FDCPA purposes, "where it contains an implicit demand for payment, includes the amount of debt, provides the phone number and address of the law firm to which payment is to be made, and expressly states its purpose is to collect a debt." Chapman v. McCabe Law Grp., P.A. , No. 3:17-CV-193-J-25JBT, 2017 WL 2712886, at *2 (M.D. Fla. June 20, 2017) (citing Caceres v. McCalla Raymer, LLC , 755 F.3d 1299, 1304 n. 5 (11th Cir. 2014) ).
Here, the Attorney Response Letter: (1) sets forth Mr. Castellanos' alleged outstanding balance due to Portfolio Recovery; (2) states that the communication is "from a debt collector;" and (3) provides the account number and address of Portfolio Recovery, which is the debt collector to which payment should be remitted. D.E. 1-4. Thus, while the Attorney Response Letter does not expressly state that its purpose is to collect a debt, the letter: (1) was sent to Mr. Castellanos' counsel in the Small Claims Action, which Portfolio Recovery filed specifically to collect the $1,423.25 debt referenced in the Attorney Response Letter and in this case; (2) was, according to Portfolio Recovery's own testimony, sent to Mr. Castellanos' counsel after January 27, 2017, when Portfolio Recovery contends that Mr. Castellanos disputed that he owed this very same debt; and (3) and included an implicit demand for payment, set forth the specific amount of debt owed, and provided the phone number and address of the entity to which payment should be made. Id. Because Portfolio Recovery sent Mr. Castellanos a *1316 letter setting forth the amount of debt claimed to be owed to Portfolio Recovery, including Portfolio Recovery's contact information and address to direct correspondence and payment, all while Portfolio Recovery had just finished prosecuting the Small Claims Action to collect this very same debt , the Court concludes that no reasonable jury could find, based on the least sophisticated consumer test, the Attorney Response Letter to be "merely informational;" instead, the Attorney Response Letter was plainly an attempt to collect Plaintiff's $1,423.35 debt. See Caceres , 755 F.3d at 1304 n. 5 ; see also Chapman , 2017 WL 2712886, at *3.
Second, there is no genuine dispute of material fact that Defendant lacked the legal authority to collect the $1,423.52 debt. In particular, there is no dispute that Ms. Desai and Defendant's counsel in the Small Claims Action engaged in numerous discussions to negotiate a settlement of Plaintiff's $1,423.52 debt. D.E. 39 ¶ 10; D.E. 58-1 ¶ 10. There is also unrefuted testimony from Ms. Nieves, paralegal and assistant to Mr. Castellanos' lawyer, Ms. Desai, that: (1) on January 3, 2017, Ms. Nieves prepared a check in the amount of $220.00, made out to the trust account for the law firm retained by Portfolio Recovery, Pollack & Rosen, P.A.; and (2) on January 6, 2017, the check was deposited into the trust account of Pollack & Rosen, P.A. D.E. 42-1; D.E. 39 ¶¶ 10, 11; D.E. 48-1 ¶¶ 10, 11. Lastly, there is no dispute that on January 11, 2017, Mr. Castellanos and Portfolio Recovery's lawyer, Ms. Weseman, executed the Settlement Agreement, which provided, in relevant part, that: (1) Portfolio Recovery "agrees to accept the sum of $220.00 as settlement in full;" (2) Mr. Castellanos "agrees to enter into a payment arrangement" requiring that "$220.00 ... be paid on or before January 10, 2017;" and (3) "[u]pon receipt and clearance of the payment, the above styled cause of action will be dismissed with prejudice." D.E. 42-1; D.E. 39 ¶¶ 10, 11; D.E. 48-1 ¶¶ 10, 11; D.E. 1-1 ¶¶ 3-5. D.E. 1-1. In addition, On February 17, 2016, Portfolio Recovery dismissed the Small Claims Action with prejudice. D.E. 41-1 ¶ 41; D.E. 57-1 ¶ 41.
Thus, this undisputed evidence, viewed in the light most favorable to Portfolio Recovery, shows that as of February 1, 2017, when Portfolio Recovery sent the Attorney Response Letter, Portfolio Recovery lacked the legal authority to collect Mr. Castellanos' $1,423.25 debt because Portfolio Recovery and Mr. Castellanos had finally settled Mr. Castellanos' debt for $220.00. D.E. 42-1; D.E. 39 ¶¶ 10, 11; D.E. 48-1 ¶¶ 10, 11; D.E. 1-1 ¶¶ 3-5. D.E. 1-1.
Lastly, with respect to Count IV, there is no genuine dispute of material fact that Portfolio Recovery had actual knowledge that it lacked legal authority to collect on Mr. Castellanos' $1,423.52 debt. As discussed above, there is no genuine dispute that it was Portfolio Recovery that: (1) negotiated a settlement of Mr. Castellanos' debt; (2) agreed to settle the debt for $220.00; (3) on January 6, 2017, deposited the $220.00 check; and (4) on January 11, 2017, executed the Settlement Agreement. D.E. 42-1; D.E. 39 ¶¶ 10, 11; D.E. 48-1 ¶¶ 10, 11; D.E. 1-1. Thus, the Court rejects Portfolio Recovery's argument that it lacked "actual knowledge" that it settled Mr. Castellanos' debt, as this argument is contrary to the plain record evidence in this case, which shows that Portfolio Recovery both actively worked to settle and, then, understood that it did settle and fully resolve any claims related to Plaintiff's $1,423.25 debt-all well before sending the February 1, 2017 Attorney Response Letter. D.E. 42-1; D.E. 39 ¶¶ 10, 11; D.E. 48-1 ¶¶ 10, 11; D.E. 1-1; see, e.g. , *1317 Elmore v. Ne. Florida Credit Bureau, Inc. , No. 3:10-CV-573-J-37JBT, 2011 WL 4480419, at *5 (M.D. Fla. Sept. 27, 2011) (granting summary judgment where the evidence demonstrated that the debt collector "knew it had no right to charge ... costs to those debtors"). Indeed, in light of the final settlement, Portfolio Recovery dismissed with prejudice the Small Claims Action on February 16, 2017. D.E. 41-1 ¶ 41; D.E. 57-1 ¶ 41.
For these reasons, the Court concludes that Plaintiff is entitled to summary judgment with respect to Counts II and IV, subject to Defendant's bona fide error defense.
c. Bona Fide Error Defense
In addition, both parties move for summary judgment in their favor on Defendant's bona fide error defense under the FDCPA. The FDCPA provides a civil cause of action against any debt collector who fails to comply with the requirements of the Act. 15 U.S.C. § 1692k(a)(1)-(3). The FDCPA, however, "provides debt collectors with an affirmative defense called the 'bona fide error' defense, which insulates them from liability even when they have failed to comply with the Act's requirements." Edwards v. Niagara Credit Sols., Inc. , 584 F.3d 1350, 1352-53 (11th Cir. 2009) (citing Johnson v. Riddle, 443 F.3d 723, 727 (10th Cir. 2006) ). The defense is found in 15 U.S.C. § 1692k(c), which provides:
A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.
15 U.S.C. § 1692k(c). The FCCPA includes an identical bona fide error defense in Fla. Stat. § 559.77(3), which provides:
A person may not be held liable in any action brought under this section if the person shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error.
Fla. Stat. § 559.77(3).
"A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." Edwards , 584 F.3d at 1352-53 (internal citations omitted)). "The failure to meet any one of those three requirements is fatal to the defense." Id.
i. Parties' arguments
Defendant argues that it is entitled to summary judgment in its favor with respect to its bona fide error defense, which would defeat each of Plaintiff's FDCPA and FCCPA claims, for three reasons. First, with respect to Plaintiff's claims that Defendant directly contacted him when he was represented by counsel, in violation of 15 U.S.C. § 1692c(a)(2) (Count I) and Fla. Stat. § 559.72(18) (Count III), Defendant argues that any such letter could only have been sent inadvertently because: (1) Ms. Cadell, who prepared the Accounting, testified that she mailed the Accounting to Ms. Desai; (2) Ms. Cadell also testified that whenever an individual is represented by an attorney, she would only send documents directly to the attorney; and (3) Ricky Vaughan, Defendant's Record's Custodian ("Mr. Vaughan"), provided unrefuted testimony that Defendant has written policies prohibiting direct communications with any consumer represented by an attorney, including "mail[ing] the response letter directly to the consumer's attorney listed in the system" and "track[ing] attorney response packages with unique tracking *1318 codes that allow it to determine and oversee that its procedures are being followed." D.E. 41 pp. 15-16.
Second, with respect to Plaintiff's claims that Defendant attempted to collect a debt that it lacked legal authority to collect, in violation of 15 U.S.C. § 1692e(2) and Fla. Stat. § 559.72(9), by sending the February 1, 2017 Attorney Response Letter, Defendant argues that an unintentional bona fide error occurred, whereby Defendant sought to collect a debt from Plaintiff, because: (1) on or before December 13, 2016, the parties tentatively agreed to settle Plaintiff's debt for $220; (2) on or about January 3, 2016, Plaintiff tendered settlement funds before tendering a fully signed Settlement; and, therefore, (3) on January 23, 2017, Defendant then marked Plaintiff's Account for "a settlement soft close." D.E. 41 pp. 16-17. According to Defendant, as this was occurring, Plaintiff, or someone acting on his behalf, continued submitting "fraudulent disputes arguing that the Account did not belong to Plaintiff," including a January 27, 2017 dispute. Id. p. 17. According to Defendant, after the January 27, 2017 dispute came in, Ms. Cadell mistakenly flagged the $220 payment as evidence that the Account belonged to Plaintiff and, then, sent the Attorney Response Letter to provide information responsive to the dispute. Id.
Under these circumstances, Defendant contends that Ms. Cadell, acting on behalf of Defendant, was clearly acting unintentionally and based on a bona fide error when she sent Ms. Desai the Attorney Response Letter, as she "had no reason to inquire further into the status of the pending settlement in order to resolve Plaintiff's specific dispute that the Account was not his," as any further inquiry "would be unreasonable given the fact that: (1) the Dispute did not challenge the Account balance reported on the credit report or argue that the Account was settled in full; (2) most people don't dispute that a debt is theirs after making payment on the account or while in the process of settling the account; and (3) Defendant should be allowed to rely on its attorneys to determine when a settlement has been finalized and enter the appropriate hard close code at the appropriate time." D.E. 41 p. 17.
Lastly, Defendant argues that it maintains policies and procedures designed to prevent FDCPA and FCCPA violations based on unlawfully: (1) contacting a debtor that Defendant knows to be represented by counsel; or (2) attempting to collect on a debt that is no longer owed. In short, Defendant relies on testimony from Mr. Vaughan regarding Defendant's written policies prohibiting direct communications with any consumer represented by an attorney, D.E. 41 pp. 15-16 (citing D.E. 41-11), and sworn declarations from Mr. Vaughan and Jennifer Cullen, Assistance Vice President for Legal Recovery ("Ms. Cullen"), explaining that Defendant requires outside counsel to "enter settlement codes to close-out accounts in Defendant's system," so that when a "hard close code *CC:C118 is entered, the account balance is automatically zeroed and Defendant's system will not generate any further correspondence containing an account balance," D.E. 41 pp. 18-19 (citing D.E. 41-9 and D.E. 41-11).
Plaintiff argues that is entitled to summary judgment with respect to Defendant's bona fide error defense or, at the very least, that Defendant is not entitled to summary judgment with respect to this defense, for three main reasons. First, Plaintiff argues that he is entitled to summary judgment because Defendant, without question, "does not maintain procedures reasonably adapted to avoid sending debt collection letters" either directly to individuals represented by counsel or to individuals with debts that have been settled *1319 in full, because Defendant committed both types of FDCPA and FCCPA infractions in this case. D.E. 38 pp. 8-9. In other words, if Defendant had adequate procedures, it would never have violated the FDCPA and/or FCCPA here. Id.
Second, Plaintiff argues that a reasonable jury could find that Defendant's procedures are not reasonably adapted to prevent Defendant from violating the FDCPA or FCCPA because Defendant relies entirely on outside counsel inputting the proper "soft" or "hard" settlement code into Defendant's system-without Defendant independently verifying its counsel's use of these "soft" and "hard" settlement codes in determining how and whether to contact debtors to collect on debts. D.E. 57 pp. 3-5.
Lastly, Plaintiff argues that a reasonable jury could conclude that Defendant's policies are, in any event, not reasonably adapted to prevent Defendant from violating the FDCPA or FCCPA, as the "soft" and "hard" coding system and Defendant's written policies: (1) require that outside counsel enter a "soft" settlement code once a debtor remits payment; and (2) Defendant continues to send notices to debtors with "soft" settlement codes flagged in the system-even though remitting payment should preclude Defendant from sending any debt collection notices to debtors. D.E. 57 pp. 3-5. In other words, "Defendant's procedures are not reasonably adapted to prevent Defendant from stating that money is due when a debt has already been settled because Defendant's procedures leave its computer with a balance due as of the entry of the soft code and up to the entry of a hard code when in reality the debt is fully settled as of the entry of the soft code." Id. p. 5.
ii. Court's ruling
The Court finds genuine issues of material fact as to whether Defendant's procedures are reasonably adapted to prevent Defendant from violating the FDCPA or FCCPA. Thus, Defendant may present this defense to the jury at trial.
On one hand, for example, a jury could conclude that Defendant's coding system is not reasonably adapted to prevent FDCPA and FCCPA violations because the "soft" and "hard" coding system allows Defendant's automated collection system to mail notices to either a debtor or a debtor's attorney-even after debt is collected or settlement proceeds are remitted to Defendant-which in certain circumstances violates the FDCPA and FCCPA. See, e.g. , Gibbs v. Palm Beach Credit Adjustors, Inc. , No. 15-60586-CIV, 2015 WL 4698427, at *2 (S.D. Fla. Aug. 6, 2015) (finding a "triable issue of fact regarding whether Defendant maintained procedures to avoid errors, and whether its procedures were reasonably adapted to avoid" the alleged violations in that case, where the defendant used automated software to generate debt collection letters that generated misleading debt collection notices). This is especially true here, where the evidence indicates that Defendant relies entirely on outside counsel-with minimal, if any, oversight-to input the proper "soft" or "hard" settlement code. Thus, Defendant's complete reliance on actions of third parties, without any oversight, to ensure that Defendant does not violate the FDCPA or FCCPA "create[s] a triable issue of fact regarding whether Defendant maintained procedures to avoid errors, and whether its procedures were reasonably adapted to avoid the specific ... [violations] in this case." Gibbs , No. 15-60586-CIV, 2015 WL 4698427, at *2 ; Isaac v. RMB, Inc., No. 12-2030, 2014 WL 1278096 at *11 (N.D. Ala. Mar. 27, 2014) ("Although Cloud & Tidwell has offered evidence that it trains its employees on the requirements of the FDCPA and tests them to be sure they understand the requirements before being allowed to make collection calls, this evidence *1320 fails to explain sufficiently how the training is 'reasonably adapted' to prevent such errors as leaving messages without disclosures. The court cannot say as a matter of law, on the basis of this evidence, that Cloud & Tidwell's procedures are "reasonably adapted" to prevent the mistake as required for the bona fide error defense under § 1692k(c), and its motion for summary judgment on this claim is due to be denied."), aff'd, 604 Fed.Appx. 818 (11th Cir. 2015) (per curiam); Crespo v. Butler & Hosch, P.A. , No. 13-60047-CIV, 2014 WL 11531360, at *5-6 (S.D. Fla. Mar. 21, 2014) (finding a "a genuine issue of material fact as to whether Defendant maintained procedures to avoid any such error of sending correspondence directly to a represented party" where the defendant "submitted evidence that it trains employees to comply with the FDCPA, updates its case management software to reflect any party's representation by counsel, and requires all subsequent communications to be sent to counsel," but the plaintiff "has submitted evidence that those procedures allowed repeated failures").
Yet, on the other hand, the "soft" and "hard" code system also includes safeguards intended to prevent FDCPA and FCCPA violations. For example, Defendant's employees and Defendant's outside counsel are required to input information concerning whether: (1) debtors are represented by counsel; and (2) a particular account has been settled, such that Defendant lacks the legal right to collect such debt. These requirements are also part of Defendant's written policies and procedures prohibiting FDCPA and FCCPA violations. D.E. 65-2. Under these circumstances, a reasonable jury could find Defendant's coding system and written policies and procedures to be reasonably adapted to prevent FDCPA and FCCPA violations. See, e.g. , D.E. 41-9; D.E. 41-11 (explaining that Defendant requires outside counsel to "enter settlement codes to close-out accounts in Defendant's system," so that when a "hard close code *CC:C118 is entered, the account balance is automatically zeroed and Defendant's system will not generate any further correspondence containing an account balance").
Thus, "[c]onsidering the evidence as a whole, a jury could reasonably conclude that Defendant has failed to show, by a preponderance of the evidence, that its procedures were reasonably adapted to avoid any correspondence-related errors." Id. ; Gibbs , 2015 WL 4698427, at *2 ; Isaac , 2014 WL 1278096 at *11. Under these circumstances, a reasonable jury could "find for either party with respect to the third element of the bona fide error defense." Crespo , 2014 WL 11531360, at *5-6 ; Gibbs , 2015 WL 4698427, at *2 ; Isaac , 2014 WL 1278096 at *11. Accordingly, neither party is entitled to summary judgment with respect to Defendant's bona fide error defense. Accordingly, it is
ORDERED AND ADJUDGED as follows:
(1) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, D.E. 54, is DENIED.
(2) Defendant's Motion for Summary Judgment, D.E. 41, is DENIED.
(3) Plaintiff's Motion for Partial Summary Judgment, D.E. 37, is GRANTED IN PART and DENIED IN PART. Plaintiff is granted summary judgment with respect to Counts I, II, III and IV of Plaintiff's Complaint. However, Plaintiff is not granted summary judgment with respect to Defendant's bona fide error defense. The Motion is otherwise DENIED.
*1321 DONE AND ORDERED in Miami, Florida this 3d day of November, 2017.

Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard , 661 F.2d 1206 (11th Cir. 1981).

However, for reasons set forth at supra pp. 1317-19, Plaintiff is not entitled to final judgment in his favor with respect to Counts I and III because there remain genuine issues of material fact concerning whether Defendant is entitled to immunity from liability under the FDCPA and FCCPA based on Defendant's affirmative defense of bona fide error.

In his briefing, Plaintiff argues that the evidence shows that Defendant either "knew or should have known" that it sought to collect an invalid debt. D.E. 38 pp. 7-8. However, Defendant can only be liable for violating Fla. Stat. § 559.72(9) if Plaintiff shows, by a preponderance of the evidence, that Defendant actually knew that it sought to collect an invalid debt. See, e.g. , Bank of Am., N.A. v. Zaskey , No. 9:15-CV-81325, 2016 WL 2897410, at *13 (S.D. Fla. May 18, 2016) ; see also Williams v. Streeps Music, Co., Inc. , 333 So.2d 65, 67 (Fla. 4th DCA 1976) ("Since the trial judge did not state his reasons for dismissing the complaint, it may be that the dismissal resulted from the allegation that appellee knew 'or should have known' that the claim was not legitimate. Section 559.72(9) F.S. requires that the person against whom recovery is sought 'know' the claim is not legitimate. On remand the allegation 'or should have known' should be stricken.").

Plaintiff does not include any allegations pertaining to the February 16, 2017 letter in his Complaint. D.E. 1. Thus, the Court will not consider any arguments concerning the February 16, 2017 letter in resolving the parties' competing summary judgment motions. See, e.g. , Vega v. T-Mobile USA, Inc. , 564 F.3d 1256, 1271 (11th Cir. 2009) (criticizing "cognitive dissonance by the district court" and "strongly disapprov[ing] of ...judicial rewriting of the plaintiff's pleading").